663 So.2d 653 (1995)
Frank L. MORSANI, individually and for the use and benefit of Tampa Bay Baseball Group, Inc. and Tampa Bay Baseball Group, Inc., a Florida corporation, Appellants,
v.
MAJOR LEAGUE BASEBALL; Bowie Kuhn; Peter V. Ueberroth; Edwin M. Durso; Francis T. Vincent, Jr.; National League of Professional Baseball Clubs; Charles S. Feeney; William D. White; American League of Professional Baseball Clubs; Leland S. MacPhail, Jr.; Robert W. Brown, M.D.; National Association of Professional Baseball Leagues, Inc., a Florida Corporation; Atlanta National League Baseball Club, Inc., d/b/a Atlanta Braves; Chicago National League Ball Club, Inc., d/b/a Chicago Cubs; the Cincinnati Reds, d/b/a Cincinnati Reds; Florida Marlins, Inc., d/b/a Florida Marlins, a Florida Corporation; Harry Wayne Huizenga; Blockbuster Entertainment Corp., a Delaware Corporation registered to do business in Florida; Houston Sports Association, Inc., d/b/a Houston Astros; Los Angeles Dodgers, Inc., d/b/a Los Angeles Dodgers; Peter O'Malley; Montreal Baseball Club, Ltd., d/b/a Montreal Expos; Sterling Doubleday Enterprises, L.P., d/b/a New York Mets; Fred Wilpon; the Phillies, d/b/a Philadelphia Phillies; Bill Giles; Pittsburgh Associates, d/b/a Pittsburgh Pirates; Douglas D. Danforth; Carl F. Barger; St. Louis Baseball Club, Inc., d/b/a St. Louis Cardinals; Fred L. Kuhlmann; San Diego National League Baseball Club, Inc., d/b/a San Diego Padres; Lurie Sports, Inc., d/b/a San Francisco Giants; the Orioles, Inc., d/b/a Baltimore Orioles; Boston Red Sox Baseball Club, d/b/a Boston Red Sox; Haywood Sullivan; Golden West Baseball Company, d/b/a California Angels; Chicago White Sox; Jerry M. Reinsdorf; Cleveland Indians Baseball Co., d/b/a Cleveland Indians; Detroit Baseball Club, Inc., d/b/a Detroit Tigers; Kansas City Royals Baseball Corp., d/b/a Kansas City Royals; Milwaukee Brewers Baseball *654 Club, d/b/a Milwaukee Brewers; Alan H. Selig; Minnesota Twins Partnership, d/b/a Minnesota Twins; MTI Acquiring Co.; Carl Pohlad; Minnesota Twins, Inc., d/b/a Minnesota Twins Baseball Club, a/k/a Minnesota Twins; Calvin R. Griffith; Thelma Griffith Haynes; Peter Dorsey; Peter Dorsey, P.A.; New York Yankees, Inc., d/b/a New York Yankees; George M. Steinbrenner; Oakland Athletics Baseball Company, d/b/a Oakland Athletics; the Baseball Club of Seattle, Inc., d/b/a Seattle Mariners; Texas Rangers, Ltd., d/b/a Texas Rangers; Eddie Chiles; Edward Gaylord; Toronto Blue Jays Baseball Club, d/b/a Toronto Blue Jays, Appellees.
No. 94-01780.
District Court of Appeal of Florida, Second District.
October 4, 1995.
Rehearing Denied November 30, 1995.
Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, and Cunningham Law Group, P.A., Tampa, for Appellants.
John W. Foster, Sr. of Baker & Hostetler, Orlando, for Appellees.
Ben J. Hayes, St. Petersburg and Douglas E. Hart of Frost & Jacobs, Cincinnati, Ohio, for Appellee National Association of Professional Baseball Leagues, Inc.
RYDER, Acting Chief Judge.
Frank Morsani and the Tampa Bay Baseball Group (TBBG) seek review of the trial court's dismissal of their complaint alleging tortious interference with advantageous contractual and business relationships and antitrust violations in connection with their attempt to acquire a major league baseball team. We hold that the trial court erred in its dismissal for failure to state a cause of action for tortious interference because the complaint sufficiently alleged that the appellees exceeded the scope of their approval *655 rights. We further conclude that the antitrust exemption for baseball is limited to the reserve clause. Because our decision renders the third and fourth issues moot, we do not address them. Accordingly, we reverse the dismissal and remand for further proceedings consistent with this opinion.
Appellants were plaintiffs in a multi-count suit against sixty defendants, nearly all of whom were associated with major league baseball in one capacity or another at the relevant times. The complaint alleged that the defendants had tortiously interfered with various contractual rights and advantageous business relationships which the plaintiffs had developed over the years in their efforts to acquire ownership of a major league baseball team in Tampa, Florida, and, that, by conspiring together to prevent the plaintiffs from succeeding in that endeavor, the defendants had violated Florida's antitrust laws.
The trial court dismissed the complaint as to fifty-eight of the sixty defendants pursuant to a motion for failure to state a cause of action pursuant to Florida Rule of Civil Procedure 1.140(b)(6). The plaintiffs and the remaining two defendants stipulated without prejudice to the plaintiffs' rights to challenge the propriety of the final judgment itself, that the two defendants would be deemed included in the order of dismissal.
Counts I through III of the complaint alleging tortious interference correspond to the plaintiffs' attempts to purchase a team through negotiations with owners of Minnesota Twins, Inc. and Texas Rangers, Ltd. and to acquire an expansion team, respectively. Count IV alleged that the defendants' acts of tortious interference constituted an antitrust violation.
Our function when reviewing an order of dismissal entered pursuant to Rule 1.140(b), Florida Rules of Civil Procedure, is confined to whether the trial court properly concluded that the complaint did not state a cause of action. In reaching that determination, we must take the pleaded facts as true and we are not concerned with the quality of the allegations or how they will ultimately be proved.
Troupe v. Redner; 652 So.2d 394, 395 (Fla. 2d DCA 1995), citing Cook v. Sheriff of Collier County, 573 So.2d 406, 408 (Fla. 2d DCA 1991).
The complaint alleges that in 1982, Morsani attended the major league baseball winter meetings, expressed his desire to purchase a major league baseball team and sought advice from various defendants concerning the team's purchase and relocation to the Tampa Bay area. Upon the defendants' advice, TBBG was formed. Various defendants told the plaintiffs that they would support and approve the sale of the Minnesota Twins, Inc. to them if they would secure a site to build a major league baseball stadium in the Tampa Bay area. At an expense in excess of $2 million, the plaintiffs secured a long-term lease with the Tampa Sports Authority for the construction of a baseball stadium and entered into negotiations with the shareholders of Minnesota Twins, Inc. for the purchase of their stock.
In 1984, the owners of 51% of the stock of Minnesota Twins, Inc., Calvin Griffith and Thelma Griffith-Haynes, agreed to sell their controlling interest to the plaintiffs for approximately $24 million on condition that they first buy H. Gabriel Murphy's 42.14% minority interest in the corporation. The plaintiffs then negotiated and entered into a fully-executed written contract with Murphy for the purchase of his interest, at a purchase price of $11.5 million. The contract provided that its closing was conditioned upon prior approval by the owners of other American League teams, as the Constitution of the American League required, and any other approvals which might validly be required. Thereafter, with full knowledge of these agreements, various of the defendants conspired together and used improper means to prevent the plaintiffs from consummating their purchase. They caused Griffith and Griffith-Haynes to sell their 51% interest to Carl Pohlad. They also demanded that the plaintiffs assign their contract with Murphy to Pohlad, and that Murphy consent to the assignment. At the time this assignment was demanded, the value of the minority interest purchased by the plaintiffs had increased from $11.5 million to $25 million.
*656 The plaintiffs balked at the demand and sought payment for the $13.5 million increase in value of the contract, as well as reimbursement of the $2 million previously expended, as a condition to assigning the contract to Pohlad. The relevant defendants then threatened the plaintiffs. These threats were that plaintiffs would never own an interest in a major league baseball team, and that there would never be a major league baseball team in the Tampa Bay area, unless the plaintiffs assigned the contract as demanded and accepted only $250,000.00 for the assignment, and, further, that they agree to forbear pursuing any legal remedies for the additional $15 million plus in damages in exchange for obtaining an ownership interest in another major league baseball team in time to begin the 1993 season. In exchange for the promise of another team, the plaintiffs assigned their contract to Pohlad.
The complaint also alleged that in 1988, several defendants informed the plaintiffs that they would support and approve the sale of Texas Rangers, Ltd. to the plaintiffs. The plaintiffs then reached an agreement with Eddie Gaylord for the purchase of his 33% interest in the partnership, and entered into a written contract with Eddie Chiles for the purchase of his 58% controlling interest in the partnership. Thereafter, with full knowledge of these agreements, various defendants conspired together and used improper means to prevent the plaintiffs from consummating their purchase. They caused both Gaylord and Chiles to breach their agreements with the plaintiffs in favor of a Texas investor. They then, again, threatened the plaintiffs that they would never own an interest in a major league baseball team, and that there would never be a major league baseball team in the Tampa Bay area, unless the plaintiffs agreed to forbear pursuing any legal remedies in exchange for obtaining an ownership interest in another major league baseball team in time to begin the 1993 season. In exchange for the renewed and continuing promise of another team, the plaintiffs once again withheld their claims.
Some of the defendants informed the plaintiffs in 1988 that, consistent with the prior promises made to obtain their forbearance, the plaintiffs would be awarded an expansion team in time to begin the 1993 season. Thereafter, various defendants conspired together and used improper means to prevent the plaintiffs from obtaining the promised team. In 1989, they interfered with the plaintiffs' advantageous business relationships by demanding that one of the investors in TBBG relinquish his interest as a condition of obtaining the team, and thereby reduced the corporation's financial viability. The defendants then prohibited the plaintiffs from obtaining any additional financial backing from persons or entities not located in the Tampa Bay area, including Sam Walton. These interferences reduced the financial viability of the plaintiffs well below that of a competitor group led by H. Wayne Huizenga, and effectively eliminated the plaintiffs from contention for the promised expansion team which began the 1993 season as The Florida Marlins in Miami.
To establish the tort of interference with a contractual or business relationship, the plaintiff must allege and prove (1) the existence of a business relationship under which the plaintiff has legal rights, (2) an intentional and unjustified interference with that relationship by the defendant and (3) damage to the plaintiff as a result of the breach of the business relationship. Serafino v. Palm Terrace Apartments, Inc., 343 So.2d 851 (Fla. 2d DCA 1976).
The appellants acknowledge that a cause of action for tortious interference does not exist against one who is himself a party to the contract allegedly interfered with. United of Omaha Life Ins. Co. v. Nob Hill Associates, 450 So.2d 536, 539 (Fla. 3d DCA), review dismissed and denied, 458 So.2d 273, 274 (Fla. 1984). They urge, however, that none of the defendants except Calvin Griffith and Thelma Griffith-Haynes owned stock in Minnesota Twins, Inc., and only they and Gabriel Murphy could contract to sell their stock in the Twins to the plaintiffs. They further contend that the various defendants' approval rights do not make them parties to the contract.
The trial court concluded that the existence of the defendants' approval rights made them, as the leagues and teams, the *657 source of the business opportunity allegedly interfered with, and, therefore, were incapable of interference. See Genet Co. v. Annheuser-Busch, Inc., 498 So.2d 683 (Fla. 3d DCA 1986). Genet, however, is distinguishable because the brewer's decision to disapprove the proposed transfer was based entirely on business considerations. No malice was shown. Here, the appellants have alleged the use of threats, intimidation and conspiratorial conduct.
[I]t is clear that the privilege to interfere in a contract because of a financial interest is not unlimited. Frank Coulson, Inc.-Buick v. General Motors Corp., 488 F.2d 202 (5th Cir.1974). The better view is that it is necessary for the interfering party to have a financial interest in the business of the third party which is in the nature of an investment in order to justify the interference. .. . Furthermore, a privilege to interfere with a third party's conduct does not include the purposeful causing of a breach of contract.
Yoder v. Shell Oil Co., 405 So.2d 743, 744 (Fla. 2d DCA 1981), review denied, 412 So.2d 470 (Fla. 1982).
Where there is a qualified privilege to interfere with a business relationship, the privilege carries with it the obligation to employ means that are not improper. McCurdy v. Collis, 508 So.2d 380, 384 (Fla. 1st DCA 1987). As the appellants have pleaded their cause of action, the defendants' approval rights were exercised outside the context of the proper exercise of their rights. See Peacock v. General Motors Acceptance Corp., 432 So.2d 142 (Fla. 1st DCA 1983).
We conclude, therefore, that Counts I, II and III state a cause of action for tortious interference with advantageous contractual and business relationships and reverse their dismissal.
Turning to the antitrust claim, the defendants, relying on the United States Supreme Court decisions supporting baseball's exemption from antitrust laws, Federal Base Ball Club of Baltimore v. National League, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922); Toolson v. New York Yankees, Inc., 346 U.S. 356, 74 S.Ct. 78, 98 L.Ed. 64 (1953); and Flood v. Kuhn, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972), argued that these cases exempt from the antitrust laws the entire business of baseball. The trial judge thoroughly reviewed those cases and a more recent case pertinent to the antitrust cause of action, Piazza v. Major League Baseball, 831 F. Supp. 420 (E.D.Pa. 1993). In Piazza, Judge Padova concluded that the precedential value of the trilogy of Supreme Court decisions regarding baseball's exemption is limited to the reserve system. Although the trial judge here found Judge Padova's decision well-reasoned, he ultimately concluded that he was bound by the decision of the Fifth District in Butterworth v. National League of Professional Baseball Clubs, 622 So.2d 177 (Fla. 5th DCA 1993), which granted a petition to set aside the state's civil investigative demands pursuant to state antitrust law. On appeal, the Florida Supreme Court answered in the negative the following question certified by the Fifth District as one of great public importance:
Does the antitrust exemption for baseball recognized by the United States Supreme Court in Federal Base Ball Club of Baltimore ... and its progeny exempt all decisions involving the sale and location of baseball franchises from federal and Florida antitrust law?
Butterworth, 622 So.2d 177, 178. The trial judge below did not have the benefit of the Florida Supreme Court's decision which reversed the appellate court and held that federal and state antitrust laws applied to decisions involving sales and locations of baseball franchises, and that the antitrust exemption for baseball extended only to the reserve system. Butterworth v. National League of Professional Baseball Clubs, 644 So.2d 1021 (Fla. 1994).
The appellees argue that despite the Florida Supreme Court's pronouncement in Butterworth, the Commerce Clause bars application of state antitrust laws to interstate professional sports leagues even in the absence of a baseball antitrust exemption. We disagree. State antitrust laws not in direct conflict with federal antitrust laws are neither preempted nor precluded by any federal considerations. Postema v. National League *658 of Professional Baseball Clubs, 799 F. Supp. 1475 (S.D.N.Y. 1992), reversed in part on other grounds, 998 F.2d 60 (2nd Cir.1993); California v. ARC America Corp., 490 U.S. 93, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989).
Reversed and remanded.
DANAHY and LAZZARA, JJ., concur.