**MONTGOMERY & LARMOYEUX, a Florida General Partnership, by Robert M. Montgomery, Jr., General Partner, Plaintiff,**

v.

**PHILIP MORRIS, INC., R.J. Reynolds Tobacco Company, and Michael Maher, Defendants.**

No. 97–8959–CIV.

United States District Court, S.D. Florida.

Jan. 14, 1998.

---

**4.** New York law governs the Agreement (Agreement § 10.1).

James Beasley, Jr., West Palm Beach, FL, for plaintiffs.

John Romano, Michael Eriksen, West Palm Beach, FL, for defendant Michael Maher.

Joseph Ianno, West Palm Beach, FL, for R.J. Reynolds.

Stephen Susman, Houston, TX, for Philip Morris.

Parker Thomson, Miami, FL, for Lawton Chiles, Jr., and Robert Butterworth.

## *ORDER OF REMAND*

GOLD, District Judge.

Montgomery & Larmoyeux, a Florida law firm, asks the Court to deny removal, and remand this case to the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida, for lack of subject matter jurisdiction. The issue before the Court is whether plaintiff's claim against defendant Michael Maher, a citizen of Florida, is so utterly devoid of merit as to be considered frivolous.

### I. FACTS

In February, 1995, the State of Florida and thirteen private law firms entered into an agreement to prosecute a claim against several tobacco companies to recover medicaid funds expended by the State for the treatment of alleged smoking-related illnesses suffered by Florida medicaid recipients. The thirteen law firms and the State executed a contingency-fee agreement entitled "Standard contract—State of Florida, Agency for Health Care Administration." The introductory paragraph states that the Con-

tract is entered into by the State of Florida and the "independent law firms" identified on the signature pages, hereinafter referred to as the "Provider or Providers." Section II, paragraph B, provides "This contract may be terminated by the State of Florida or Provider, or individual Providers may unilaterally withdraw, upon no less than thirty (30) calendar days notice. . . ." The law firm of Montgomery & Larmoyeux, as well as the law firm of defendant, Michael Maher, signed the contingency-fee agreement. Defendant Maher and the plaintiff, Montgomery & Larmoyeux, (hereinafter Montgomery) are both Florida citizens.

On August 25, 1997, the State and some of the tobacco companies entered into a settlement agreement. Subsequently, a dispute arose between the State and some of the independent law firms, including Montgomery, over the amount of attorneys' fees owed to the law firms. As a result of the fee dispute, there are several lawsuits and at least six appeals related to the attorney-fee issue presently pending in state court. Montgomery filed this lawsuit against Mahler, Philip Morris Inc., and RJ Reynolds Tobacco Company in state court alleging claims for tortious interference with a contract and/or business relationship. Philip Morris Inc. and RJ Reynolds Tobacco Company removed the case to federal court. Removal is grounded on diversity jurisdiction.

Plaintiff claims the case should be remanded to state court because defendant Mahler and the plaintiff are Florida citizens, thus there is no diversity jurisdiction. Philip Morris Inc. and RJ Reynolds Tobacco Company argue that Maher's citizenship should not deprive them of diversity jurisdiction. Relying on the doctrine of fraudulent joinder, defendants argue that the case should not be remanded to state court because there is no possibility that plaintiff can establish a cause of action against Maher for tortious interference with a contract or advantageous business relationship because Mahler was a party

to the contract allegedly interfered with. Under Florida law, the general rule is that no such action may be maintained against a party to the contract. See *Ethyl Corp. v. Balter,* 386 So.2d 1220 (Fla. 3d DCA 1980). But the burden on the party asserting fraudulent joinder is a heavy one. *Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.1997). If there is even a *possibility* that a state court would find that the complaint states a cause of action against the resident defendant, the federal court *must* find that joinder was proper and remand the case to state court. *Id.* Thus the issue before the Court is a narrow one: whether state law *might* recognize a cause of action for tortious interference in light of the factual circumstances of the case. *Crowe,* 113 F.3d at 1541–42.

## II. STANDARD FOR REMOVAL

█ Philip Morris Inc. and RJ Reynolds Tobacco Company's right to remove this case to federal court is conferred by statute. *Gould v. Mutual Life Ins. Co.,* 790 F.2d 769 (9th Cir.1986). Construction of removal statutes is governed by federal law. *Brown v. Demco, Inc.,* 792 F.2d 478 (5th Cir.1986). Federal courts have uniformly held that removal statutes must be strictly construed against removal in order to "prevent encroachment on the state court's right to decide cases properly brought before it." *Harris v. Huffco Petroleum Corp.,* 633 F.Supp. 250, 253 (S.D.Ala.1986). Strict construction is particularly important in cases removed on diversity grounds. *Id.*

█ In accordance with the law respecting the rights of state courts, a party seeking to remove a case from state court on the basis of fraudulent joinder must show: (1) that there is *no possibility* that plaintiff could prove a cause of action against the resident defendant; or (2) that the plaintiff fraudulently plead jurisdictional facts in order to subject that resident defendant to the jurisdiction of the state court.[1] *Crowe,* 113

1. Montgomery also filed a motion for leave to amend the complaint. In light of the Court's findings with respect to Montgomery's motion for remand, the Court need not decide the motion to amend. It notes, however, that removal jurisdiction must be determined on the basis of

claims alleged in the pleadings at the time the petition for removal is filed. *See, e.g. Pullman Co. v. Jenkins,* 305 U.S. 534, 537, 59 S.Ct. 347, 348–49, 83 L.Ed. 334 (1939) ("The second amended complaint should not have been considered in determining the right to removal, which

F.3d at 1538 (citing *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989)). In this case, defendants rely on the first theory. To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. *Crowe*, 113 F.3d at 1538. The court must be certain it has jurisdiction before it can consider a case on its merits. Therefore, a plaintiff need not show that he can survive a motion for summary judgment; the standard is much lighter. In deciding whether a case should be remanded for improper joinder the Court's role is *"limited to checking for obviously fraudulent or frivolous claims."* *Crowe*, 113 F.3d at 1542. If there is even a possibility that a state court would find that plaintiff has stated a cause of action, the federal court must find that joinder was proper and remand the case to state court. *Id.* at 1538.

### III. PLAINTIFF'S ACTION AGAINST MAHLER IS NOT FRIVOLOUS

■ In this case, the Court cannot say that plaintiff's claim is obviously fraudulent or frivolous. "Frivolous pleas are those which are so clearly and palpably bad as to require no argument to convince the court thereof, and which would be pronounced by the court indicative of bad faith in the pleader on mere inspection." *Black's Law Dictionary*, 796 (4th ed.1968). Under Florida law, a lawsuit is frivolous only if there is a complete lack of justiciable issue which renders the action completely untenable. *Bronson v. Bronson*, 685 So.2d 994, 995 (Fla. 5th DCA 1997); section 57.105 Fla.Stat. The Court also recognizes that the Florida Rules of Professional Conduct provide that it is not "frivolous" for an attorney to seek in good faith an extension, reversal or modification of existing law. Rule 4–3.1.

■ Philip Morris Inc. and RJ Reynolds Tobacco Company argue that it is clear under Florida law that a claim for tortious interference with a contract or advantageous business relationship cannot be maintained against Maher because he is a party to the contract and the business relationship with which he is accused of interfering.[2] In support of this proposition, defendants cite a number of Florida cases from the intermediate appellate courts which stand for the general proposition that a cause of action for tortious interference cannot exist against one who is himself a party to the contract. *Cedar Hills Props. v. Eastern Fed. Corp.*, 575 So.2d 673 (Fla. 1st DCA 1991); *Genet Co. v. Annheuser–Busch*, 498 So.2d 683, 684 (Fla. 3d DCA 1986); *United of Omaha Life Ins. Co. v. Nob Hill Assoc.*, 450 So.2d 536, 539 (Fla. 3d DCA 1984); *Buckner v. Lower Florida Keys Hosp. Distr.*, 403 So.2d 1025, 1028 (Fla. 3d DCA 1981); *Ethyl Corp. v. Balter*, 386 So.2d 1220, 1224 (Fla. 3d DCA 1980); *Mitchell v. Dade County School Board*, 566 So.2d 2 (Fla. 3d DCA 1980).

But Montgomery argues, persuasively, that the cases cited by defendants are factually distinguishable from this case. Each of those cases involved a plaintiff who was suing the party on the opposite side of the contract or business relationship. In contrast, Montgomery and Maher signed the contingency-fee contract as independent law firms. Montgomery and Maher were on the same side of the contingency-fee agreement. Significantly, plaintiff argues that as parties on the same side of the contract, neither law firm was the source of the other's business opportunity and neither law firm was liable for the other's breach. *Cf. Hall v. Burger King Corp.*, 912 F.Supp. 1509, 1538 (S.D.Fla. 1995) (finding that Hall had no claim against Burger King because Burger King itself was "the source of the business opportunity [it]

in a case like the present one was to be determined according to the plaintiffs' pleading at the time of the petition for removal."); *Crowe*, 113 F.3d at 1538; *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir.1995).

2. The elements needed to show a prima facie case of tortious interference with a business relationship are as follows: (1) the existence of a

business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship. *Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla.1985).

allegedly interfered with.") According to plaintiff, a different rule applies where, as here, the party alleging interference with the contract is on the same side as the party it is suing.

At the hearing on Plaintiff's Motion for Remand, the defendants conceded that they could find only one Florida case dealing with tortious interference in which the parties were apparently on the same side of the contract, citing *Schramek v. Jones*, 161 F.R.D. 119 (M.D.Fla.1995). In *Schramek* the plaintiffs sued Paula Jones alleging that she "maliciously and tortiously interfered with an alleged contract between the President and the citizens of the United States for effective governance." *Id.* at 121. The issue in *Schramek* was whether Rule 11 sanctions should be imposed against the pro se plaintiffs where the lawsuit was filed solely to punish Jones for exercising her right to file a tort action. In reaching its decision with respect to the imposition of sanctions, the court included a brief one-paragraph statement of the general rule that a party to a contract cannot be sued for tortious interference and, because Paula Jones would have been a party to any alleged contract the citizens of the United States had with the president, she was immune from suit. *Id.* at 121. The Court finds that *Schramek* is not persuasive authority for the defendants' position. First, the facts are clearly distinguishable; *Schramek* involved a contract which allegedly existed between the President of the United States and its citizens. It is not clear from the court's opinion which side of the alleged contract the parties in the tortious interference case would have been on or what their obligations would have been under the contract. Here the existence of a contract is not in dispute; it is a concrete contingent-fee contract which clearly sets forth the parties' rights and obligations. Second, the issue whether parties on the same side of a contract could sue for tortious interference was not addressed by the court. In fact there was no discussion or analysis of any kind concerning the tort of tortious interference. For these reasons, the case is not persuasive support for the defendants' position.

After extensive research, neither of the parties to this case, nor this Court, have been able to find a Florida case addressing a factual situation similar to the one presented here. Because no Florida court has decided whether parties on the same side of a contract may sue for tortious interference, it cannot be said that plaintiff's claim against Mahler is frivolous. Furthermore, as explained below, plaintiff's position has support from the Seventh Circuit.

In support of its argument that it can state a claim for tortious interference against Mahler, Montgomery cites the Florida case of *Williams v. Goldsmith*, 619 So.2d 330 (Fla. 3d DCA 1993), in which one partner in a law firm sued this former partner for interference with a contract to which both lawyers were parties, on the same side. Although the issue whether one lawyer who was party to a contract could maintain an action for tortious interference with a contract against another lawyer who was on the same side of the contract, was not specifically decided in *Williams,* the Seventh Circuit recently addressed this issue in *Sufrin v. Hosier*, 128 F.3d 594 (7th Cir.1997).

Sufrin and Hosier were law partners who practiced together between 1984 and 1989. In 1986, the firm was hired to represent Telesonics Systems Inc. in a patent claim on a contingent-fee basis. Hosier negotiated a settlement of the claim. Sufrin was to receive 1 percent of the settlement. The firm broke up and a dispute arose between the lawyers over Sufrin's fee. Sufrin filed an action for tortious interference with a contract. The court determined that Sufrin was a party to the contract with Telesonics with which Hosier had interfered. Hosier argued that under Illinois law, it is impossible to interfere tortiously with a contract to which you are a party. The court agreed that as a general rule, if you break a contract, you cannot be sued for tortiously interfering with that contract. The injured party is limited to an action for breach of contract. If that were not the case, every breach of contract would be turned into a tort action for interference with a contract. According to the Seventh Circuit, however, the general rule does not apply where one lawyer is suing

another lawyer who was party to the contract allegedly interfered with.

This case is different. Telesonics had independent contractual obligations to Hosier and to Sufrin, and Hosier had no greater right to interfere with the obligation to Sufrin than he would have had if that obligation had been set forth on a separate piece of paper.

*Sufrin v. Hosier,* 128 F.3d at 598.[3] Thus a reasonable argument could be made that in this case, as in *Sufrin,* the client, State of Florida, had independent obligations to each of the law firms with which it had contracted. Likewise, under the terms of the contract, each law firm had independent obligations to the State. Thus the contractual obligations ran from each law firm to the client and from the client to each law firm. No contractual obligations existed between the independent law firms.[4] Unlike parties on opposite sides of a contract, parties on the same side of a contract do not have a breach of contract remedy for controversies arising between them. Thus, the rationale for not permitting a tortious interference cause of action between parties on the opposite side of the contract does not apply to parties who share the same side and the same obligations.

Because no Florida court has addressed the viability of plaintiff's claim against Maher under the factual circumstances of this case, the Court finds that it is not unreasonable for the plaintiff to argue, as it did at the hearing on this motion, that the State's obligation to pay a contingency fee to each law firm was the same as it would have been had the State entered into separate contracts with each law firm,[5] and, therefore, an individual law firm had no more right to interfere with the State's obligation to another law firm than it would have had if the agreements were sepa-

rately made. For this reason, there is a *possibility* that Florida law may recognize a cause of action for this alleged tort.

By this ruling the Court is not stating that the plaintiff has a strong chance of succeeding on the merits. It finds merely that plaintiff's argument is not baseless or frivolous. Accordingly, the Court lacks jurisdiction to hear the case. Plaintiff's Motion for Remand is **GRANTED.**

---

3. Recognizing the need for a remedy where one party to a contract has interfered with the rights of another party on the same side of the contract, the Seventh Circuit was surprised by the dearth of cases on this issue. It wrote, "cases in which the parties to a tortious interference suit have contractual claims against the same obligor, or the expectation of a bequest from the same testator, are ones in which the temptation to tortious interference might seem especially great." *Sufrin,* 128 F.3d at 598.

4. If one of the independent law firm was to breach its contractual obligation to its client, the State, ethical considerations may require the other law firms to assume the duties of the breaching party. But that ethical responsibility runs to the client, not to the other law firms. See, e.g. Rules 4–1.16 and 4–1.3 Fla.R.Prof.R.

5. Indeed, several law firms unilaterally withdrew from representation prior to settlement. Presumably the State's obligations to each of those firms is not the same as to firms which stayed in the litigation until its conclusion.