**BURGER KING CORPORATION,**
Plaintiff,

v.

**ASHLAND EQUITIES, INC., Reinold T. Belle, and Robert E. Clarke,**
Defendants.

No. 00–1804–CIV.

United States District Court,
S.D. Florida.

Aug. 20, 2001.

Jessica Serell Erenbaum, Michael D. Joblove, Dennis Deam Leone, Genovese, Lichtman, Joblove & Battista, Miami, FL, for Plaintiff.

Roberto Zarco, Robert Mitchell Einhorn, Jude Christopher Cooper, Zarco & Pardo, Miami, FL, for Defendants.

### ORDER ON PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM

GOLD, District Judge.

**THIS CAUSE** is before the court on Plaintiff's motion to dismiss Defendant's Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) [D.E. 22]. Defendants have filed a response to Plaintiff's motion in which they seek leave of court to amend the Counterclaim [D.E. 24], and Plaintiff has, in turn, filed a reply [D.E. 25]. The court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. Upon consideration of the pleadings and the arguments of counsel, Plaintiff's motion to dismiss Defendants' Counterclaim [D.E. 22] is granted in part and denied in part.

### Background

#### I. Nature of Case

On May 24, 2000, the Burger King Corporation (hereinafter "Plaintiff" or "BKC") filed suit against Reinold T. Belle ("Belle"), Robert E. Clarke ("Clarke"), and Ashland

Equities, Inc. ("Ashland"), (collectively "Defendants") seeking the recovery of royalties, rents and other fees allegedly owed to Plaintiff under various franchise and guaranty agreements [D.E. 22]. Defendants filed their Answer and Affirmative Defenses to the Complaint on February 12, 2001 [D.E. 21], in which they denied all liability under Plaintiff's allegations. On that date, in addition to their Answer and Affirmative Defenses, Defendants collectively submitted a Counterclaim [D.E. 21] alleging, in general, that Plaintiff wrongfully rejected Defendants' request to assign their interests under five (5) franchise agreements. Defendants' basis for relief rests upon: (1) breach of contract, (2) breach of implied covenants of good faith and fair dealing, (3) tortious interference with contractual relations, and (4) violations of the Florida Deceptive Trade Practices Act. The motion presently before the court, filed on March 2, 2001, is Plaintiff's motion to dismiss Defendants' Counterclaim for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) [D.E. 22].

## II. Factual Allegations.

The Burger King Corporation is a Florida corporation with it principal offices located in Miami, Florida. Pl.'s Compl. at ¶ 2. Its business operations include, among other things, both the management and franchising of Burger King fast food restaurants throughout the country. Pl.'s Compl. at ¶ 6. Franchisees of Burger King restaurants are authorized to use the Burger King names and systems, including service marks and trademarks. Pl.'s

Compl. at ¶ 16. Under the terms of the typical Burger King Franchise Agreement, including the ones at issue, franchisees are obligated to make monthly payments to the Burger King Corporation for satisfaction of royalties, advertising expenses, and other fees. Pl.'s Compl. at ¶ 20.

On or about January 28, 1980, Defendants Belle and Clarke jointly negotiated for and entered into a long-term franchise agreement with Plaintiff for the authorization to operate a Burger King restaurant in the state of Kentucky. Pl.'s Compl. at ¶¶ 8, 16. Thereafter, Belle and Clark continued negotiations with Plaintiff for the franchising rights to open more restaurants. Pl.'s Compl. at ¶ 16. Up to the time at which this dispute arose, Belle and Clarke jointly owned and operated four (4) Burger King restaurants pursuant to four (4) separate Burger King Franchise Agreements. Pl.'s Compl. at ¶ 16. Defendant Ashland, in turn, owned and operated one (1) Burger King restaurant located in Kentucky. Pl.'s Compl. at ¶ 17. Unlike its co-defendants, Ashland did not rent the restaurant's premises from Plaintiff. Pl.'s Compl. at ¶ 18.

In or around August of 1999, Defendants entered into a Purchase Agreement with Regional Investments, Inc. ("RII") for the sale of all five of the Burger King restaurants described above. Def.'s Countercl. at ¶ 4.[1] Pursuant to the sales agreement, RII was to receive, among other things, all the rights and interests Defendants held under each of the five separate franchise agreements governing the operation of these restaurants. Def.'s Countercl. at ¶¶ 4, 5. Sections 14 and 15 of the

---

1. Defendants' Counterclaim mistakenly labels "Ashland Investments, Inc." as the purchaser to the sales agreement at issue. Defendants have announced this error in their response to Plaintiff's motion to dismiss and have, subsequently, motioned for leave to amend the Counterclaim in order to substitute "Ashland Investments, Inc." with "Regional Investments, Inc." In light of Defendants' typographical error the Court recognizes Defendants' declared intention and has substituted "Regional Investments, Inc." for "Ashland Investments, Inc."

franchise agreements provide, however, that any attempt to sell, assign, or transfer the rights or interests granted under the agreements are subject to Plaintiff's written consent. Def.'s Ex. A at §§ 14, 15. The manner by which franchisees are to proceed in requesting Plaintiff's approval is laid out in section 15(D) of the agreements. Def.'s Ex. A at § 15. It reads: "Prospective purchaser must complete and be approved through [Plaintiff's] standard franchisee selection process including satisfactorily demonstrating to [Plaintiff] that he meets the financial, character, managerial, equity ownership and such other criteria and conditions as [Plaintiff] shall then be applying in considering applications for new licenses." Def.'s Ex. A at § 15. In turn, section 15(D) provides that if these standards are met Plaintiff's consent will not be unreasonably withheld. Def.'s Ex. A at § 15. According to Defendants, both they and RII attempted to comply with the terms of section 15. Def.'s Countercl. at ¶ 5. Over a period of eight (8) months, Defendants and RII repeatedly attempted to demonstrate the qualifications and expertise possessed by RII's members. Def.'s Countercl. at ¶ 5. However, on May 2, 2000, Plaintiff issued a letter announcing that RII failed to satisfy the standards for franchise approval and denied RII's application. Def.'s Countercl. at ¶ 7. Soon thereafter, on May 24, 2000, Plaintiff filed the instant complaint against Defendants seeking the recovery of royalties, rents and other fees allegedly unpaid by Defendants. Pl.'s Compl. at ¶¶ 1, 27, 29, 33. On February 12, 2001, Defendants initiated the instant Counterclaim alleging that Plaintiff unreasonably withheld its consent for the sale of the franchised restaurants at issue. Def.'s Countercl. at ¶ 1. Defendants allege that Plaintiff was aware of RII's qualifications, including the fact that the proposed managing directors of RII each had eleven (11) years of experience in the franchise business and possessed sufficient business education as well as the financial resources to satisfy all of the conditions of consent imposed by Plaintiff. Def.'s Countercl. at ¶ 9. As a result of Plaintiff's unreasonable refusal to grant RII's request, Defendants allege that they have incurred substantial damages. Def.'s Countercl. at ¶¶ 20, 27, 33, 49. On October 13, 2000, Plaintiff terminated each of the franchise agreements at issue. Def.'s Countercl. at ¶ 12. Subsequently, Defendants closed all five (5) restaurants. Def.'s Countercl. at ¶ 12.

### Standard for Dismissal Under Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that dismissal of a claim is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama,* 30 F.3d 117, 120 (11th Cir.1994)(*quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). On a motion to dismiss, the Court must accept as true all facts alleged and draw all inferences therefrom in the light most favorable to the nonmoving party. *See Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1483 (11th Cir. 1994). A very low sufficiency threshold is necessary for a complaint, or counterclaim, to survive a motion to dismiss. *See Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (citation omitted). Moreover, a complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [it's] claim which would entitle [it] to relief." *Sea Vessel, Inc. v. Reyes,* 23 F.3d 345, 347 (11th Cir.1994) (citation omitted). However, a plaintiff must do more than merely "label" its claims. *See Blumel v. Mylander,* 919 F.Supp. 423, 425 (M.D.Fla.1996).

Dismissal is appropriate only when no construction of the factual allegations of a complaint will support the cause of action. *See Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993) (citation omitted).

## Discussion

### I. Motion to Dismiss Counterclaim Based upon Inconsistencies.

In Defendants' Counterclaim, the name of the party contracting for the purchase of the franchise restaurants was improperly labeled "Ashland Investments, Inc." As indicated above in Footnote 1, Ashland was not the proposed purchaser, but was instead one of the party Defendants contracting to sell the restaurants to RII. Indeed, the purchase agreement attached to Defendants' Counterclaim as Exhibit B lists RII, rather than Ashland, as the proposed purchaser.

BKC moves to dismiss Defendants' Counterclaim in its entirety on the grounds that the proposed purchaser of the franchise restaurants named in Exhibit B is repugnant to Defendants' allegations. [D.E. 22] In response to Plaintiff's motion, Defendants request leave to amend the Counterclaim so that the misnamed purchaser, "Ashland Investments, Inc.," may be substituted for the correct party, "Regional Investments, Inc." In addition, Defendants seek to amend portions of the Counterclaim which reportedly contain incorrect dates as well as the portions that allege Plaintiff's intentions for denying RII's request for franchise approval.

Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires." In addressing this language, the Supreme Court wrote:

> If the underlying facts and circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Here, Plaintiff does not object to Defendants' requests to amend the Counterclaim. Accordingly. Defendants' request for leave to amend is granted and Plaintiff's motion to dismiss the Counterclaim in its entirety based upon inconsistencies between the Counterclaim and the Counterclaim exhibits is denied.

### II. Count III, Tortious Interference with Contractual Relations

■ Count III of Defendants' Counterclaim alleges that Plaintiff tortiously interfered with the contractual relations existing between Defendants and RII. Specifically, Defendants argue that Plaintiff intentionally interfered with, and in fact did cause the termination of, the franchise purchase agreement entered into between Defendants and RII for the sale of the five Burger King restaurants at issue. Plaintiff seeks to have this count dismissed for failure to state a claim upon which relief can be granted. According to Plaintiff, a claim for tortious interference cannot lie against one who is a party to the contract which was the subject of the alleged interference. Pl.'s Mot. at 3. In essence, Plaintiff claims that, as the franchisor of the five Burger King restaurants in question, it was an essential party to the purchase agreement at issue and is thereby privi-

leged to interfere with the contract as a matter of law. Pl.'s Mot. at 3, 4.

■ In order to properly plead a claim for tortious interference with a contractual or business relationship under Florida law, Defendants must assert: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which Defendants have legal rights; (2) proof of BKC's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by BKC; and (4) damage to the Defendants as a result of the interference. *See Nautica Int'l, Inc. v. Intermarine USA, L.P.,* 5 F.Supp.2d 1333, 1344 (S.D.Fla.2000) (listing elements); *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So.2d 381, 385 (Fla. 4th DCA 1999) (same). According to Plaintiff, Defendants fail to satisfy the third pleading requirement of unjustified interference. Plaintiffs argue that, as a matter of law, an interference with contractual relations cannot be labeled as an "unjustified interference" if the interfering party is also a party to the contract.

■ In general it is true, under Florida law, that "a cause of action for tortious interference cannot exist against one who is himself a party to the contract." *Montgomery & Larmoyeux v. Philip Morris, Inc.,* 992 F.Supp. 1372, 1375 (S.D.Fla. 1998); *See also Special Purpose Accounts Receivable Cooperative Corp. v. Prime One Capital Co., L.L.C.,* 125 F.Supp.2d 1093, 1103 (S.D.Fla.2000); *Williams Electric Co., Inc. v. Honeywell, Inc.,* 772 F.Supp. 1225, 1236 (N.D.Fla.1991); *Franklin Life Ins. Co. v. Davy,* 753 So.2d 581, 587 (Fla. 1st DCA 1999); *Salit,* 742 So.2d at 385. Unlike third party interference, the law protects parties who are in privity of contract from exposure to liability for actions based upon theories of tortious interference with contractual relations by granting them a "privilege to interfere."

*See Salit,* 742 So.2d at 386; *Abele v. Sawyer,* 750 So.2d 70, 75 (Fla. 4th DCA 1999); *Florida Tel. Corp. v. Essig,* 468 So.2d 543, 544 (Fla. 5th DCA 1985). However, as the Defendants point out, the extent of this privilege is limited and does not afford an absolute bar to liability.

■ In fact, Florida courts have recognized that the privilege to interfere is a valid defense to a claim for tortious interference only where the interference was not done for some improper purpose. *See Morsani v. Major League Baseball,* 663 So.2d 653, 657 (Fla. 2d DCA 1995); *Nizzo v. Amoco Oil Co.,* 333 So.2d 491, 494 (Fla. 3d DCA 1976). The right to interfere in contractual relations, as granted to interested parties, is qualified by the obligation to proceed in good faith. This good faith requirement, common to all facets of contract law, disqualifies litigants from asserting the privilege when they have acted with malicious or conspiratorial motives. *See Morsani,* 663 So.2d at 657; *Yoder v. Shell Oil Co.,* 405 So.2d 743, 744 (Fla. 2d DCA 1981). As stated by Florida's First District Court of Appeals, "the privilege does not encompass the purposeful causing of a breach of contract." *Making Ends Meet, Inc. v. Cusick,* 719 So.2d 926, 928 (Fla. 3d DCA 1998) (*quoting McCurdy v. Collis,* 508 So.2d 380, 384 (Fla. 1st DCA 1987)).

In opposing these rulings, the Plaintiff in the instant case argues that the privilege to interfere is not bound by any factual inquiry of good faith when, as here, the interfering party is the source of the business opportunity with which it allegedly interfered. As authority for this argument, Plaintiff primarily relies upon *Hall v. Burger King Corp.,* 912 F.Supp. 1509 (S.D.Fla.1995). In that case, the court held that a claim for tortious interference did not lie against Burger King as a matter of law where the claim arose from

Burger King's refusal to grant Hall's request for approval to sell a number of franchised restaurants. *See Id.* at 1538–1539. Significantly, however, in *Hall* no allegations of improper purpose was asserted against the interfering party. Therefore, the requirement that the privilege was exercised in good faith was not at issue and the general rule that a cause of action for tortious interference will not lie against one who is a party to the contract was dispositive as a matter of law.

Unlike the facts announced in *Hall*, the Defendant in the instant case has alleged that Burger King acted in bad faith when denying their request for approval to sell the franchise restaurants at issue. Specifically, Defendants contend that Plaintiffs intentionally and unreasonably delayed the approval process and, ultimately, withheld their consent in an effort to cause Defendants financial hardships and enable Plaintiffs, thereby, to retake the franchised restaurants, which lay on real estate owned by BKC, without paying Defendants any compensation. Def's Resp. at 8. As stated in count III of Defendants' Counterclaim:

> BKC arbitrarily, unilaterally, wrongfully, maliciously, and intentionally interfered with the contract between [Defendants] and [RII] by using pretextual and demonstrably false grounds to justify its refusal to consent to the sale of the Subject Restaurants. BKC thereby intentionally interfered with the contract between [Defendants] and [RII], exceeded its justifiable business interests in doing so, and imposed undue and improper economic pressure on [Defendants] for the purpose of furthering its own financial interests.

Def.'s Countercl. at ¶ 31.

In a case presenting substantially similar to the case at bar, the Eleventh Circuit has held that a franchisor's privilege to interfere with a contract to which it is arguably a party is limited and qualified,

and whether it has exceeded that authority is generally a question for the trier of fact. *See KMS Rest. v. Wendy's Int'l*, No. 98–5336, 2000 WL 177629 (11th Cir. Feb. 2, 2000) (unpublished). In *KMS Rest.*, a claim for tortious interference with contractual relations was brought against Wendy's fast food corporation after it refused to grant the plaintiffs' request for approval to sell several franchised restaurants. According to the plaintiffs, Wendy's intentionally and improperly interfered with the contract to sell the restaurants by requiring the plaintiffs to allow Feldon Nutter, a member of the Board of Directors of Wendy's, to become a shareholder of KMS for the purpose of capitalizing upon the sale of the restaurants. *See id.* at pp. 2–4. Negotiations to make Mr. Nutter a shareholder of KMS ultimately failed, and KMS's request for franchise sale approval was denied shortly thereafter. *See id.* at pp. 3–4. KMS filed suit against Wendy's alleging tortious interference with contractual relations and claimed, therein, that Wendy's interfered with the sale of the restaurants for the improper purpose of attempting to capitalize on KMS's "good deal." *See id.* at p. 12. Wendy's claimed, as Plaintiffs do here, that it was privileged to interfere with the contractual relations arising from the sale of the franchises since it was the source of KMS's business opportunity. *See id.* at pp. 7–8. In fact, the arguments and case law advanced by Wendy's in *KMS Restaurant*, mirrored the arguments and authorities relied upon by the Defendants in this case. *See id.* at pp. 8–11.

In resolving this case, the Eleventh Circuit held that actions alleging tortious interference for an improper purpose, as opposed to cases in which no assertion of impropriety is made, raise the question of whether the interfering party has gone beyond its limited and qualified privilege.

*See id.* at pp. 11–12. Such a determination, as the court notes, is generally reserved for the trier of fact. *See id.* Finding that upon the facts presented a reasonable juror could concluded that Wendy's acted for an improper purpose and, thereby, exceeded the bounds of the privilege to interfere, the Eleventh Circuit denied Wendy's motion for summary judgment. *Id.*

In the instant case, Defendants have sufficiently stated a claim for tortious interference with contractual relations by alleging that BKC's conduct went beyond the limited scope of the privilege to interfere, in that BKC maliciously denied their application for franchise sale approval in order to retake the franchised restaurants. Accordingly, Plaintiff's motion to dismiss count III of Defendant's Counterclaim is denied.

### III. Count IV, Florida Unfair and Deceptive Trade Practices Act

■ Defendants allege in count IV of the Counterclaim that Plaintiff violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") by, among other things, interfering with the sale of the franchised restaurants. Defendants seek both compensatory and punitive damages under this count. Plaintiff argues that the Defendants lack standing to bring suit under the Act, and have thus failed to state a claim upon which relief may be granted. Pl.'s Mot. at 6, 7. According to Plaintiff, the damage relief afforded under the FDUTPA is expressly limited to "consumers." Pl.'s Mot. at 4, 5. Plaintiff argues that Defendants were in the process of selling, not buying, the franchised restaurants at issue, and therefore were not "consumers" as intended by the Act. Pl.'s Reply at 7, 8.

Section 501.211 of the Florida Deceptive and Unfair Trade Practices Act provides: "In any individual action brought by a *consumer* who has suffered a loss as a result of a violation of this part, such *consumer* may recover actual damages." In light of the plain language of this section, the vast majority of courts have held that the FDUTPA, under the original version of the Act as well as after the 1993 amendments, "only permits *consumers* to bring actions seeking monetary relief." *Warren Tech., Inc. v. Hines Interests Ltd. P'ship,* 733 So.2d 1146, 1148 (Fla. 3d DCA 1999); *see also N.G.L. Travel Assoc. v. Celebrity Cruises, Inc.,* 764 So.2d 672, 674 (Fla. 3d DCA 2000); *Babbit Elecs., Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1182 (11th Cir. 1994); *Big Tomato v. Tasty Concepts, Inc.,* 972 F.Supp. 662, 663 (S.D.Fla.1997). Courts have interpreted "consumer" to mean one engaged in the purchase of goods or services. *See N.G.L. Travel Assoc.,* 764 So.2d at 674; *National Alcoholism Programs/Cooper City, Fla., Inc. v. Palm Springs Hosp. Employee Benefit Plan,* 825 F.Supp. 299, 302–03 (S.D.Fla. 1993). As Plaintiff correctly contends, Defendants in the instant case were not engaged in the purchase of the restaurants but were, instead, trying to sell the restaurants. Thus, they are not "consumers" as required under Fla. Stat. § 501.211. Accordingly, Defendants lack standing to sue under the FDUTPA and Plaintiff's motion to dismiss count IV of the Counterclaim is granted.

Accordingly, it is

**ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Amend the Counterclaim [D.E. 24] is granted.

2. Plaintiff's Motion to Dismiss [D.E. 22] is granted in part and denied in part, as set forth above. Count IV is dismissed with prejudice. Plaintiff/Counterdefendant BKC shall file an answer to the remaining counts of the Counter-

claim within ten days of the date of this order.