Geoffrey Todd HODGES, as Trustee of the Frank Musolino, Jr. Irrevocable Trust u/t/d 10/6/97, and as Trustee of the Ashley Marie Musolino Irrevocable Trust u/t/d 10/6/97, Plaintiff,

v.

Eugene BUZZEO, Defendant.

Eugene Buzzeo, Counter–Plaintiff,

v.

Geoffrey Todd Hodges, as Trustee of the Frank Musolino, Jr. Irrevocable Trust u/t/d 10/6/97, and as Trustee of the Ashley Marie Musolino Irrevocable Trust u/t/d 10/6/97, and Frank Musolino, Counter–Defendants.

No. 9:01–CV–660Y17,AP.

United States District Court,
M.D. Florida,
Tampa Division.

March 14, 2002.

Joseph H. Varner, III, Holland & Knight, LLP, Tampa, FL, for Plaintiff.

Scott C. Davis, Samuel W. Braver, Patricia A. DeLeo, Buchanan Ingersoll, P.C., for Defendant.

Amy J. Greer, Klett, Rooney, Lieber & Schorling, Pittsburgh, PA, for counter-claimant.

## *ORDER GRANTING PLAIN-TIFF/COUNTER–DEFENDANTS' MOTION TO DISMISS*

KOVACHEVICH, District Judge.

This cause comes before the Court on Plaintiff/Counter–Defendants' Motion to Dismiss three counterclaims, pursuant to Rule 12(b)(6) of the Fed.R.Civ.P., for failure to state a claim upon which relief can be granted. (Docket No. 16). Thereafter, Defendant/Counter–Plaintiff Eugene Buzzeo filed a responsive memorandum. (Docket No. 19).

### I. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that this Court must dismiss a plaintiff's complaint for fail-

ure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must also accept the plaintiff's well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). See also, *Arnold v. Board of Education of Escambia County, Alabama*, 880 F.2d 305, 314–15 (11th Cir. 1989) (stating that a court, when ruling on a 12(b)(6) motion to dismiss, should view the plaintiff's allegations as true and not inquire into the truth or sincerity of those allegations, a matter better handled on a motion for summary judgment). In determining whether to grant a Rule 12(b)(6) motion, the Court may also consider the allegations in the complaint, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint. *Watson v. Bally Mfg. Corp.*, 844 F.Supp. 1533, 1535 (S.D.Fla.1993), aff'd, 84 F.3d 438 (11 Cir. 1996), quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 299 (1990). See also Rule 10(c) of the Fed.R.Civ.P. stating, "A copy of any written instrument which is an exhibit to a pleading is part thereof for all purposes."

## II. Factual Background

Plaintiff Geoffrey Todd Hodges [hereafter Hodges], as trustee, originally filed a three-count complaint for fraud in the inducement, violation of Federal Securities Act, and breach of contractual representations and warranties against Eugene Buzzeo [hereafter Buzzeo] in the Circuit Court for Hillsborough County, Florida. Buzzeo sought removal of the case to this Court pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332.

Along with his answer to the complaint, Buzzeo filed three counterclaims: one against Hodges, as trustee, for breach of contract under a Stock Purchase Agreement; a second counterclaim against Frank Musolino [hereafter Musolino] for tortious interference with contract and/or prospective economic advantage; and a third against Hodges, as trustee, and Musolino for shareholder oppression or breach of fiduciary duty. Hodges and Musolino filed a motion to dismiss all three counterclaims for the reasons set forth below. The facts are summarized from the counterclaim and are accepted as true for purposes of this motion.

### A. Counterclaim Against Geoffrey Todd Hodges, as Trustee, for Breach of Contract

Buzzeo, Inc., a Pennsylvania close corporation founded in May 1993, specializes in computer software products and related services. By September of 1999, the company had successfully completed its fourth private placement of stock through a transaction with Musolino, the grantor of two trusts in which Hodges serves as trustee.

Buzzeo alleges that Musolino agreed to purchase 1,022,000 shares of Buzzeo, Inc. but required the fulfillment of several conditions before completing the investment. First, Buzzeo avers Musolino required him to sell one million shares of Buzzeo's personal stock holdings in the company to the trusts at a price of $2.5 million or $2.50 per share, a price less than the $4.00 per share paid in connection with prior transactions between Musolino or the trusts' transactions with the company. Secondly, Musolino required Buzzeo appoint Hodges to the Board of Directors of the Company. Finally, Buzzeo claims Musolino "demanded" that he enter into a three-year employment and non-competition agreement with the company. Buzzeo believed the employment contract for three years was in

part consideration for the sale of stock to the trusts at a discounted rate.

On the same day that Musolino purchased the 1,022,000 shares of stock from the company in May 2000, the trusts also entered into a Stock Purchase Agreement [hereafter SPA] directly with Buzzeo for the sale and purchase of his personal stock in the company. Buzzeo alleges that Hodges drafted a provision in the SPA contemplating Buzzeo's entry into a three-year employment contract as CEO of the company for $175,000.00 per year. See Responsive Memorandum at 11. Following both transactions, Hodges joined the Board of Directors as required by Musolino. Buzzeo further alleges that Hodges led a three-person committee on the board of directors to ensure no employment contract was offered to Buzzeo, in breach of the oral agreement between Buzzeo and Musolino and in breach of the SPA. Buzzeo has alleged damages ranging from the loss of salary for three years at $175,000.00 per year, plus benefits and bonuses, as well as additional damages.

## B. Counterclaim Against Musolino Pursuant to Fed.R.Civ.P. 13(h) and 19(a) for Tortious Interference with Contract and/or Prospective Economic Advantage.

Buzzeo's second counterclaim is against Musolino pursuant to Rules 13(h) and 19(a) of the Fed.R.Civ.P. Buzzeo alleges that Musolino tortiously interfered with the SPA between Buzzeo and Hodges, as trustee, and, with the oral agreement between Buzzeo and Musolino.

Buzzeo claims Hodges, as trustee, took all actions relating to a variety of transactions between Musolino and the company, the trusts and the company, and the trusts and Buzzeo, upon the express instructions from Musolino. Musolino not only participated in the transactions between the trusts and Buzzeo but also directed the

negotiations. Furthermore, the counterclaim alleges that Musolino tortiously used his influence with the Board of Directors, acting both directly and through Hodges, as trustee, to ensure that Buzzeo would not receive the contemplated employment contract. This was in breach of Musolino's oral agreement with Buzzeo and in breach of the SPA between Buzzeo and the trusts. Consequently, Buzzeo alleges damages for tortious interference with contract and/or prospective economic advantage. The damages vary from the loss of salary for three years or loss of economic advantage and additional damages based on the difference between the reduced price at which Buzzeo sold his stock to the trusts and the actual price paid by Musolino and the trusts to the company for its stock.

## C. Counterclaim Against Plaintiff and Musolino for Shareholder Oppression or Breach of Fiduciary Duty

The third counterclaim is against both Hodges and Musolino for breach of fiduciary duty as majority shareholders. Buzzeo alleges that Musolino and the trusts own a majority of shares of Buzzeo, Inc. Buzzeo is one of the minority shareholders of the company owning 2,608,690 shares. Buzzeo avers that Musolino and trustee Hodges, as majority shareholders who also directed two votes on the Board of Directors, knowingly forced bad management decisions to destroy the value of the company, rendering the stock worthless. Moreover, Buzzeo alleges Musolino and Hodges stripped the assets of the company, took them under their own control, and used them for Musolino's personal gain. Buzzeo claims damages as a result of this breach of fiduciary duty.

## III. Discussion

## A. Counterclaim for Breach of Contract

As a threshold issue the Court must address which state law governs in this

breach of contract counterclaim. The SPA ¶ 7(g) provides for the agreement to be construed in accordance with the laws of the State of Arizona, without application of Arizona's choice of law principles. Hodges and Buzzeo correctly maintain that the laws of Arizona or Florida require the same elements to plead breach of contract; therefore, this Court does not need to consider the choice of law issue at this time. See *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1388 n. 17 (11th Cir.1988) (holding choice of law issue is moot when laws of different jurisdictions lead to identical results); *Barrett v. Prudential Property and Casualty Ins.*, 790 F.2d 842, 844 (11th Cir.1986) (same).

 Under Arizona law, a complaint for breach of contract is sufficient against a motion to dismiss if it alleges four elements: (1) the making of the contract; (2) the obligation assumed under such contract; (3) the breach of the contract; (4) a statement of the amount claimed as a result of such breach. *Builders Finance Co., et. al. v. Holmes*, 89 Ariz. 157, 359 P.2d 751 (1961). *A.G. Edwards & Sons v. Smith, et. al.*, 736 F.Supp. 1030, 1038 (1989) (citing essential elements for breach of contract are the existence of contract, breach, and damages). Under Florida law, the elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages. *Abruzzo v. Haller*, 603 So.2d 1338, 1340 (Fla. 1st DCA 1992).

Although Hodges raises four arguments in his motion to dismiss, the Court only needs to address one of the arguments concerning whether the claim for breach of contract can be asserted under the SPA. Hodges argues that the SPA does not contain any terms Buzzeo could rely upon to assert a claim for breach of contract. Hodges points to provision 7(c) of the SPA as providing for a fully integrated contract. As such, the parol evidence rule prevents introduction of extrinsic evidence that contradicts a fully integrated contract. Hodges contends that Buzzeo is attempting to offer extrinsic terms contradictory to the full integration clause of the SPA. Where Buzzeo claims the SPA contains language imposing an obligation on Hodges, as trustee, to offer Buzzeo a three-year employment contract as CEO of the Company for a salary of $175,000.00, no such language is found in the agreement. The provision at issue is ¶ 5(j) of the SPA, which states in full: "Within 90 days after the closing, *Seller will execute and deliver to Issuer* an Employment Agreement and an Agreement not to compete in form and substance satisfactory to the Buyer." (emphasis added). The SPA identifies Hodges, in his trustee capacity, as the buyer and Buzzeo as the seller. Thus, Hodges moves to dismiss Buzzeo's counterclaim because it fails to allege that Buzzeo complied with ¶ 5(j) of the SPA, which required that Buzzeo tender the employment agreement to the Issuer or company in a satisfactory form to Hodges, the buyer under the SPA.

Buzzeo's counterclaim alleges that the contract between himself and Hodges, as trustee, is the SPA. He claims that Hodges, as Trustee and as counsel to both the trusts and Musolino, incorporated language into the SPA that contemplated Buzzeo's entry into the three-year employment agreement. See Counterclaim at ¶ 67. In his responsive memorandum, Buzzeo interprets the language of ¶ 5(j), that the employment agreement had to be "in form and substance satisfactory to buyer," as meaning that Hodges was in the position to determine whether or not such an agreement ever would be offered to Buzzeo. See Responsive Memorandum at 8–9 note 2. Furthermore, the counterclaim alleges that Hodges breached the SPA by not offering Buzzeo a three-year employment agreement at a salary of $175,000.00

dollars per year. Buzzeo claims damages as a result of Hodges's failure to perform.

 As noted above, when an exhibit is attached to the pleading, a court may consider it when ruling on a motion to dismiss. See § I. Standard of Review. Without addressing whether the SPA is fully integrated, the plain and unambiguous language of ¶ 5(j) imposes an obligation on Buzzeo, as Seller, to execute and deliver to Issuer or Buzzeo, Inc. an employment and non-competition agreement to the satisfaction of Hodges, as trustee and buyer, under the SPA. Absent from Buzzeo's counterclaim is any factual allegation that he complied with this obligation to execute and deliver such agreements to the company in satisfaction to Hodges, as buyer under the SPA. Failure to plead such an allegation is detrimental to Buzzeo's counterclaim. Essentially, Buzzeo's counterclaim does not allege the critical fact needed to show breach of contract by Hodges— namely, that Buzzeo tendered an employment agreement to the issuer and Hodges subsequently refused to accept it. See *Ship Construction & Funding Services, Inc., et. al. v. Star Cruises,* 174 F.Supp.2d 1320, 1326 (S.D.2001) (granting motion to dismiss because plaintiff's breach of contract claim could not be reconciled with express terms of the contract). *Global Freight Warehouse, Inc. v. Ace Hardware Corp.,* 1997 WL 580541, 1997 U.S.Dist. Lexis 15768 (S.D.1997) (dismissing claim for breach of contract where plaintiff failed to allege facts necessary to support viability of a contract).

Assuming all of the facts to be true, as is required, Buzzeo's counterclaim fails to allege that he complied with his obligation to execute and deliver an employment agreement to the Issuer or company. As a result, Buzzeo has failed to plead necessary factual allegations showing there was in fact a breach of contract to entitle him to relief under such a claim.

**B. Counterclaim for Tortious Interference with Contract and/or Prospective Economic Advantage**

Before determining whether Buzzeo has sufficiently stated a claim for tortious interference with contract, the Court must address the choice of law issue in this counterclaim. Neither party has sufficiently addressed the choice of law issue. Musolino proposes that either Arizona or Florida law applies, in which case he suggests both jurisdictions apply the same elements for a tortious interference claim; whereas, Buzzeo merely suggests in a footnote of his memorandum in opposition to the motion to dismiss that Pennsylvania or Florida law will control, in which case both jurisdictions require the same elements to plead as well. A claim for tortious interference with contract under the substantive law of Florida, Arizona, or Pennsylvania appears to be based on *Prosser's Restatement 2nd of Torts § 766.* Because the parties maintain that the law will render identical results under any one of the State's substantive law, this Court will apply the law of the forum state, in this case Florida's substantive law for tortious interference with contract at this stage of consideration.

 Under Florida law, to state a claim for tortious interference with contract the claimant must plead four elements: (1) the existence of a business relationship under which plaintiff has legal rights, not necessarily evidenced by an enforceable contract; (2) proof of defendant's knowledge; (3) intentional and unjustified interference with relationship by defendant; and (4) damage to plaintiff as a result of interference. *Nautica Int'l. v. Intermarine USA, L.P.,* 5 F.Supp.2d 1333, 1344 (S.D.Fla. 1998); *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So.2d 381, 385 (Fla. 4th DCA 1999).

In his memorandum in support of the motion to dismiss, Musolino contends the counterclaim fails to allege a claim for tortious interference with contract for several reasons. One, the counterclaim fails to allege that Buzzeo had a contract with Buzzeo, Inc. as employer, so that Musolino could have interfered with it. Musolino maintains that the contract needed to be with Buzzeo, Inc. Two, the language of the SPA fails to show that Buzzeo had a contract with Hodges as trustee to become CEO of Buzzeo, Inc. The SPA is not an employment contract nor is it an agreement by Buzzeo, Inc. for employment. Lastly, the counterclaim alleges that the board of directors had authority to make an offer, yet no allegation was made that the board of directors intended to hire Buzzeo or make him an offer so that Musolino could have interfered with it.

The Court finds Buzzeo's counterclaim sufficiently pleads the first, second and fourth elements required under Florida law. In terms of the first element, Buzzeo sufficiently alleged the existence of a business relationship under which he has legal rights relating to the SPA but he fails to state a claim against Musolino for tortious interference with the *oral agreement* between Musolino and Buzzeo. Buzzeo's responsive memorandum attempts to clarify that the tortious interference with contract claim is based on the SPA between Buzzeo and Hodges, as trustee, yet Buzzeo cites to his counterclaim wherein he alleges that Musolino "tortiously used his influence . . . to assure that Gene Buzzeo would not receive the contemplated employment agreement, *in breach of Musolino's agreement with Gene Buzzeo* and also in breach of the Stock Purchase Agreement between Gene Buzzeo and the Trusts." See Buzzeo's Responsive Memorandum at 11 (emphasis added).

▮▮▮ Musolino correctly argues the general rule that a defendant cannot be liable for tortiously interfering with a contract unless the contract is between the plaintiff and a third party. See Hodges and Musolino's Memorandum at 15. See also *Burger King Corp. v. Ashland Equities, Inc. et. al.,* 161 F.Supp.2d 1331, 1336 (S.D.Fla.2001) (citing general rule that the law protects parties who are in privity of contract from liability for actions based on tortious interference with contractual relations by granting a privilege to interfere). Florida courts recognize the privilege to interfere as a valid defense to a claim for tortious interference so long as the interference was not done for some improper purpose. *Morsani v. Major League Baseball,* 663 So.2d 653, 657 (Fla. 2d DCA 1995). Buzzeo has not alleged that Musolino was unprivileged in his actions to allow for a claim for tortious interference with the oral agreement. As a result, Buzzeo's counterclaim against Musolino for tortious interference with the oral agreement must fail because Musolino cannot tortiously interfere with his own agreement between himself and Buzzeo unless lack of privilege is alleged.

The counterclaim sufficiently alleges the existence of a business relationship based on the SPA between Hodges, as trustee, and Buzzeo. Musolino lacks privilege to interfere because the contract is between Buzzeo and a third party, Hodges, as trustee. Musolino contends that the SPA cannot be a contract for employment and that Buzzeo needs to have a contract with Buzzeo, Inc, but Musolino offers no case law to support the proposition that an employment contract requires certain necessary or proper parties in order for Buzzeo to have attendant legal rights under the SPA. See *Dah Chong Hong, Ltd. v. Silk Greenhouse, Inc.,* 719 F.Supp. 1072, 1075 (M.D.1989) (holding complaint did not fail to allege existence of business or contractual relationship by merely labeling it "contractual relations").

Buzzeo has alleged that Musolino participated in the negotiations of the SPA between the trusts and Buzzeo. The Court can infer that Musolino knew of the contract between Hodges and Buzzeo, which meets the second element required to plead a claim for tortious interference. Buzzeo also alleges damages as a result of receiving no employment contract, meeting the fourth element required.

■ The issue is whether Buzzeo has sufficiently alleged breach of contract under a claim for tortious interference. Buzzeo's counterclaim avers that "Musolino, as the single largest shareholder in the Company, tortiously used his influence with the Board of Directors, acting both directly and through plaintiff-Trustee Hodges, to assure that Gene Buzzeo would not receive the contemplated employment agreement ... in breach of the Stock Purchase Agreement between Gene Buzzeo and the Trusts." See Counterclaim ¶ 79. This allegation is insufficient to withstand the motion to dismiss because it cannot be squared with this Court's previous holding that there was in fact no breach of contract based on the first counterclaim brought by Buzzeo.

Thus, based on the Court's holding above that there were insufficient allegations of Hodge's breach of contract under the SPA, Buzzeo's counterclaim against Musolino for tortious interference with the same contract must also fail. See *Hager v. Venice Hospital, Inc., et. al.*, 944 F.Supp. 1530, 1535 (M.D.1996) (granting summary judgment, finding plaintiff had not presented sufficient evidence contracts had been breached). *Gerber v. Keyes Co.*, 443 So.2d 199, 201 (Fla. 3d DCA 1983) (dismissing tortious interference claim where there was no breach). If there was no breach of contract under the SPA because Buzzeo did not execute and deliver an employment agreement to the company in form and satisfaction to Hodges, then no

tortious interference claim can stand against Musolino.

Buzzeo has not sufficiently alleged facts showing that he complied with his obligation under the SPA. For example, Buzzeo has not pled that he tendered the employment agreement and that Musolino, either prior or subsequent to his tender, intentionally interfered by convincing Hodges not to accept the employment agreement. The key fact here is that Buzzeo needed to tender the employment agreement; without this, no interference has occurred as of yet.

■ In the alternative, Buzzeo brings a counterclaim against Musolino for tortious interference with prospective economic advantage. To sufficiently state a claim under this tort, also known as tortious interference with an advantageous business relationship, the claimant must plead four elements: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship. *Magre v. Charles*, 729 So.2d 440, 444 (Fla. 5th DCA 1999). *Florida Fern Growers Ass'n v. Concerned Citizens of Putnam County*, 616 So.2d 562 (Fla. 5th DCA 1993).

Musolino in his memorandum in support of his motion to dismiss cites the Florida rule enunciated in *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla.1994) that defines the advantageous business relationship as the existence of an actual, identifiable understanding or agreement, which in all probability would have been completed if the defendant had not interfered. See Supporting Memorandum at 16. Musolino argues that Buzzeo makes no allegation he had this

required business relationship with Buzzeo, Inc., the employer, thus, the counterclaim should be dismissed because the SPA is not an employment agreement between Buzzeo and the employer.

Buzzeo contends that the SPA is the contract at issue; that Musolino used his influence with the board of directors and also with Hodges, as trustee, to ensure that Buzzeo would not receive the employment contract; and, that as a result, Musolino tortiously interfered with the trusts' performance of the SPA.

■■■ This Court finds that Buzzeo has insufficiently pled a claim for tortious interference with prospective economic advantage based on the same reasons as set forth above concerning the counterclaims for breach of contract and tortious interference with contract. Although Buzzeo avers that Musolino used his influence with the board of directors and with Hodges, as trustee, to ensure Buzzeo would not receive the employment contract, the counterclaim is devoid of any factual allegation that Buzzeo complied with ¶ 5(j) and tendered the employment agreement to the company in satisfaction of Hodges.

Several Florida courts have addressed the standard for courts to use in determining if the required element of an advantageous business relationship has been properly pled. The test is whether the parties' understanding would have been completed if the defendant had not interfered. See *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla. 1994), citing *Charles Wallace Co. v. Alternative Copier Concepts, Inc.*, 583 So.2d 396, 397 (Fla. 2d DCA 1991) (holding action for intentional interference with business expectancy will lie if the parties' understanding would have been completed if the defendant had not interfered); see also *United Yacht Brokers, Inc. v. Gillespie*, 377 So.2d 668, 672 (Fla.1979) (holding question is not necessarily whether interference induced a

breach of contract, but more generally, whether it caused a loss of gain plaintiff would have received absent the interference.). Assuming arguendo that Musolino did interfere with the SPA, by applying the test to this counterclaim, it begs the question: would the understanding between Hodges and Buzzeo have been completed if Musolino had not interfered? According to the obligations imposed under the SPA, the answer is clearly no. Even if Musolino had not interfered, the SPA ¶ 5(j) imposes the obligation on Buzzeo to execute and deliver to Buzzeo, Inc. an employment and non-competition agreement in satisfaction to Hodges, as trustee and buyer under the SPA. The missing factual allegation is that Buzzeo executed and delivered an employment agreement to the issuer or employer, in form and satisfaction to the buyer or Hodges, as trustee. Without this factual allegation, the counterclaim fails to allege the existence of an advantageous business relationship under which plaintiff had legal rights.

## C. Counterclaim Against Plaintiff and Musolino for Shareholder Oppression or Breach of Fiduciary Duty

Musolino and Hodges initially argue that under either Florida or Arizona law there is no cause of action for "shareholder oppression" as Buzzeo entitles his counterclaim. Despite the misnomer, Buzzeo's counterclaim seeks to allege a breach of fiduciary duty by Hodges, as trustee and Musolino. See Counterclaim at ¶ 90. Moreover, Buzzeo qualifies in his responsive memorandum that the counterclaim is for breach of fiduciary duty by Musolino and Hodges in their capacity as majority shareholders of the close corporation. See Responsive Memorandum at 14 and 15. Buzzeo contends Arizona law does not apply to this counterclaim; instead, he argues either Florida or Pennsylvania law

will govern, but, that this Court need not consider the choice of law issue at this time because both jurisdictions allow for relief to a minority shareholder who suffers injury from a majority shareholder's breach of fiduciary duty.

Florida and Pennsylvania do recognize a claim by a minority shareholder against majority shareholders and/or directors for breach of fiduciary duty. See *Tillis v. United Parts, Inc.*, 395 So.2d 618, 619 (Fla. 5th DCA 1981) (citing *Hanraty v. Ostertag*, 470 F.2d 1096 (10th Cir.1972), acknowledging that corporate officers, controlling corporation through ownership of majority of stock have fiduciary relation to minority stockholders). See also *Tyler v. O'Neill, et. al.*, 994 F.Supp. 603, 612 (E.D.Pa.1998) (holding majority shareholders or group of shareholders who combine to form a majority are fiduciaries to minority shareholders).

Before addressing whether Buzzeo stated a claim for breach of fiduciary duty, this Court must determine if Buzzeo has standing to bring a direct or individual suit against majority shareholders/directors or if he must pursue the same cause of action pursuant to a derivative suit. The court in *Alario v. Miller and Miller*, 354 So.2d 925, 926 (Fla. 2d DCA) distinguished direct and derivative actions as follows:

> An action brought by a stockholder is derivative if the gravamen of the complaint is injury to the corporation or to the whole body of its stock or property and not injury to the plaintiff's individual interest as a stockholder. Citing 19 Am.Jur.2d Corporations § 528 (1965). Conversely, direct action, or as some prefer, an individual action, is a suit by a stockholder to enforce a right of action existing in him. What these definitions attempt to convey is that a stockholder may bring suit in his own right to redress an injury sustained directly by him, and which is separate and distinct

from that sustained by other stockholders. If, however, the injury is primarily against the corporation, or the stockholders generally, then the cause of action is in the corporation and the individual's right to bring it is derived from the corporation. *Id.*

Pennsylvania courts follow the same definitions for direct and derivative actions. See *Korman Corp. v. Franklin Town Corp.*, 34 Pa.D. & C.3d 495, 505–506 (1984) (stating rule where shareholder alleges and establishes an injury, personal to himself and apart from injury to corporation, he may bring a direct suit). *In re Penn Central Securities Litigation*, 347 F.Supp. 1324, 1327 (E.D.Pa.1972) (citing rule "if primary duty breached by defendant is to the corporation, the shareholders, although affected by the wrongdoing, have no individual right of action").

Buzzeo contends in his responsive memorandum that he has standing to bring a direct or individual suit against Hodges and Musolino as majority shareholders because "when a shareholder has suffered an injury distinct and unique from any injury suffered by the corporation, or not suffered simply as a result of his or her status as a stock owner, that shareholder may bring a direct, rather than derivative, action against the tortfeasor." See Responsive Memorandum at 13. Buzzeo cites *Salit v. Ruden, et. al.*, 742 So.2d 381, 388–89 (Fla. 4th DCA 1999) and *Tyler v. O'Neill*, 994 F.Supp. 603, 609–610 (E.D.Pa. 1998) in support of this proposition.

Both cases are distinguishable from the facts alleged in Buzzeo's counterclaim. In *Salit*, the minority shareholders sued the director/majority shareholder based on an injurious falsehood claim, which the court held directly affected the claimant's personal property interests as shareholders. See *Salit* at 389. The court distinguished the claim as one based on a direct, rather

than derivative action, because the injurious falsehood claim against the director/majority shareholder did not derive from a duty or obligation owed to the corporation. *Id.* The *Tyler* court found that the claimant sufficiently alleged a direct action because the defendants refused to provide financial statements and other related information and concealed the claimant's ownership interest in the company by failing to include his name in loan applications, etc. See *Tyler* at 613.

■■■ By contrast, Buzzeo's counterclaim makes the following factual allegations:

¶ 86. Musolino, himself, and working through plaintiff-Trustee Hodges, as part of their design to acquire the assets of the Company through his position as single largest shareholder of the company and directing two (2) votes on the Board of Directors, knowingly forced bad management decisions to destroy the value of the Company with the result that the stock of the Company is now worthless.

¶ 87. Through their actions, Musolino and plaintiff-Trustee Hodges have stripped the assets of the Company.

¶ 88. Musolino has taken the assets of the Company under his control and is now using them for his own personal gain.

¶ 89. The foregoing actions were taken in an effort to oppress the other Company shareholders and in violation of the fiduciary obligations that shareholders owe to one another.

The above paragraphs do not allege an individual action showing direct injury to Buzzeo as a minority shareholder. Only in Buzzeo's responsive memorandum does he attempt to qualify that Musolino and Hodges as majority shareholders used their status "to assure that Gene Buzzeo was not offered the agreed upon three (3) year employment contract ..." See Re-

sponsive Memorandum at 15. This Court can infer that through the incorporation clause of ¶ 83 of the counterclaim, Buzzeo intends to bring suit against Musolino and Hodges as majority shareholders for breach of contract pursuant to the SPA or for Musolino's tortious interference with the SPA and/or prospective economic advantage. Yet if Buzzeo's prior counterclaims for breach of contract and tortious interference with contract/prospective economic advantage fail to state causes of action, then Buzzeo does not sufficiently allege an injury separate and distinct from that suffered by the corporation. Paragraphs 86–89 allege injury that directly affects the corporation and only indirectly affects Buzzeo's stock as a minority shareholder. See *Alario v. Miller,* 354 So.2d 925, 927 (2d DCA 1978) (holding no individual action exists if damages are only indirectly sustained by shareholders as a result of injury to corporation). Thus, unless Buzzeo can allege direct injury, the counterclaim for breach of fiduciary duty must be brought pursuant to a derivative action. The Court at this time declines to address whether Buzzeo has sufficiently alleged breach of fiduciary duty pursuant to a derivative claim. Accordingly, it is

**ORDERED** that the Plaintiff/Counter–Defendants' Motion to Dismiss (Docket No. 16) be granted as to Defendant/Counter–Plaintiff's three counterclaims. The Counter–Plaintiff shall have ten days to file an amended counterclaim to correct the deficiencies noted herein, if they can be corrected. If no amended counterclaim is filed in a timely manner the counterclaim is dismissed with prejudice.