576 So.2d 748 (1991)
MILLER CONSTRUCTION COMPANY, etc., Appellant/Cross-Appellee,
v.
FIRST INDUSTRIAL TECHNOLOGY CORP., Appellee/Cross-Appellant.
No. 90-2087.
District Court of Appeal of Florida, Third District.
February 19, 1991.
Rehearing Denied April 22, 1991.
*749 Leiby, Elder, Ferencik and Libanoff, and Larry R. Leiby, and Nestor Bustamante, Miami, for appellant/cross-appellee.
Edward L. Walton, Miami, for appellee/cross-appellant.
Neil H. Butler, Tallahassee, for The Florida Council of the Associated General Contractors of America, Inc., as amicus curiae.
Before BARKDULL, FERGUSON and GODERICH, JJ.
PER CURIAM.
Miller Construction Company [Miller], the plaintiff below, appeals from an adverse final judgment finding that it does not have a valid mechanics' lien. First Industrial Technology Corp. [FIT], the defendant below, cross-appeals from an adverse jury verdict. We affirm on the main appeal based on our conclusion that Miller does not have a valid mechanics' lien pursuant to either section 713.03, Florida Statutes (1987), or section 713.05, Florida Statutes (1987). We reverse on the cross-appeal based on our finding that the trial court erred in denying FIT's motion for directed verdict where the oral contract sued upon was barred by the statute of frauds.
In August of 1988, Miller, a general contractor, entered into a "design-build" agreement with FIT [hereinafter referred to as "Part 1 Agreement"].[1] The Part 1 Agreement provides for the furnishing of a preliminary design.[2] There was also an agreement which was entitled "Part 2 Agreement  Final Design and Construction" [hereinafter referred to as "Part 2 Agreement"]; however, this agreement was never executed by the parties.[3]
Miller filed a complaint alleging that upon completion of the Part 1 Agreement, FIT requested further design services, and that the architect actually completed a portion of the design duties. The complaint contained counts for breach of contract, quantum meruit, and enforcement of a mechanics' lien. FIT filed a counterclaim which sought to discharge the lien and recover damages on the basis that the lien was fraudulent.
The claims for breach of contract and quantum meruit were tried before a jury. The jury found that there was no express oral contract entered into between the parties. However, the jury found that there was an implied agreement between the parties to perform services beyond the Part 1 Agreement which resulted in FIT knowingly and voluntarily accepting the services. The jury awarded Miller damages in the amount of $21,338.00. FIT filed several post-trial motions which were denied by the trial court.
The enforcement of the mechanics' lien claim was heard by the trial court. The trial court found that Miller did not have a valid mechanics' lien.
Miller contends that as a "design-builder", it has a valid mechanics' lien pursuant to either section 713.03, Florida Statutes (1987), or section 713.05, Florida Statutes (1987). We disagree.
*750 "Mechanics' liens are purely creatures of statute, and must be strictly construed." O'Kon & Co., Inc. v. Riedel, 540 So.2d 836, 841 (Fla. 1st DCA 1988) (citing Falovitch v. Gunn & Gunn Constr. Co., 348 So.2d 560 (Fla. 3d DCA 1977)). "[U]nless the lien is expressly created by the mechanics' lien law, it does not exist." O'Kon, 540 So.2d at 841 (citing Fell v. Messeroff, 145 So.2d 238, 239 (Fla. 3d DCA 1962)).
In construing section 713.03, Florida Statutes (1987), we find that it is not applicable to the instant case. Section 713.03 provides in pertinent part as follows:
(1) Any person who performs services as architect,... subject to compliance with and the limitations imposed by this part, shall have a lien on the real property improved for any money that shall be owing to him for his services in preparing plans, specifications, or drawings used in connection with improving the real property or for his services in supervising any portion of the work of improving the real property, rendered in accordance with his contract and with the direct contract.
(2) Any architect ... who in the practice of his profession shall perform services, by himself or others, in connection with a specific parcel of real property and subject to said compliances and limitations, shall have a lien upon such real property for the money owing to him for his professional services, regardless of whether such real property is actually improved.
Section 713.03 is not applicable for several reasons. First, Miller is not an architect, and therefore cannot perform services as an architect. See O'Kon, 540 So.2d at 840; see also § 481.223(1), Fla.Stats. (1987) (person may not practice architecture unless he is a registered architect). Second, section 713.03(1) requires that the real property be improved. Miller argues that using the drawings for the purpose of obtaining financing improves the real property. Section 713.01(7), Florida Statutes (1987),[4] which defines "improve", and section 713.01(8), Florida Statutes (1987),[5] which defines improvement, indicate that the sole act of furnishing drawings does not improve real property.
Miller also asserts that the mechanics' lien is valid pursuant to section 713.05, Florida Statutes (1987), which provides in pertinent part as follows: "a contractor who complies with the provisions of part I shall, subject to the limitations thereof, have a lien on the real property improved for any money that is owed to him for labor, services, materials, or other items required by, or furnished in accordance with, the direct contract." § 713.05, Fla. Stat. (1987) (emphasis added). Section 713.05 also requires that the real property be improved. As stated earlier we reject Miller's argument that the furnishing of drawings for the purpose of obtaining financing "improved" the real property in question.
On cross-appeal, FIT contends that the oral contract sued upon was barred by the statute of frauds, and therefore, the trial court erred in denying its motion for directed verdict. We agree.
Partial performance of an oral contract removes the contract from the statute of frauds. See Elliot v. Timmons, 519 So.2d 671 (Fla. 1st DCA), rev. denied, 525 So.2d 878 (Fla. 1988); Evans v. Parker, 440 So.2d 640 (Fla. 1st DCA 1983). However, *751 as the parties acknowledge, the doctrine of part performance is not applicable to personal service contracts. See Johnson v. Edwards, 569 So.2d 928 (Fla. 1st DCA 1990); Tobin & Tobin Ins. Agency, Inc. v. Zeskind, 315 So.2d 518 (Fla. 3d DCA 1975).
Miller asserts that the oral agreement sued upon  architectural design services beyond the Part 1 Agreement  is not a personal service contract. We, however, find that architectural design services are personal in nature since they involve artistic and unique abilities. See generally, Mongiovi v. Doerner, 24 Or. App. 639, 546 P.2d 1110, 1113 (Ct.App. 1976) (architect and project manager "were parties to personal service contracts whereby the county was purchasing professional services involving peculiar skills, knowledge and expertise."); Brown v. Cox, 459 S.W.2d 471, 474 (Tex. Ct. App. 1970) (architect's services are personal services); Wilson v. Hardy, 309 S.W.2d 114, 117 (Tex. Ct. App. 1957) (contract employing engineer and architect was a personal service contract). For the foregoing reasons, we conclude that the trial court erred in failing to grant FIT's motion for directed verdict.[6]
Accordingly, we affirm the main appeal, and reverse the cross-appeal.
NOTES
[1] The Part 1 Agreement is not the subject of this litigation.
[2] The Part 1 Agreement provides that architectural services will be provided by Jeff Falkanger and Associates, Inc.
[3] FIT claims that it never agreed to the Part 2 Agreement. However, Miller alleges that Bob Davis, as an agent of FIT, agreed to the agreement. FIT alleges that it did not know that Miller did any work beyond the Part 1 Agreement until it received the final plans which were immediately returned.
[4] Section 713.01(7) provides as follows:

(7) "Improve" means build, erect, place, make alter, remove, repair, or demolish any improvement over, upon, connected with, or beneath the surface of real property, or excavate any land, or furnish materials for any of these purposes, or perform any labor or services upon the improvements, including the furnishing of carpet or rugs or appliances that are permanently affixed to the real property; or perform any labor or services upon the improvements, including the furnishing of carpet or rugs or appliances that are permanently affixed to the real property; or perform any labor or services or furnish any materials in grading, seeding, sodding, or planting for landscaping purposes, including the furnishing of trees, shrubs, bushes, or plants that are planted on the real property, or in equipping any improvement with fixtures or permanent apparatus.
[5] Section 713.01(8) provides as follows: (8) "`Improvement' means any building, structure, construction, demolition, excavation, landscaping, or any part thereof existing, built, erected, placed, made, or done on land or other real property for its permanent benefit."
[6] Since this issue is dispositive of the cross-appeal, we do not need to address the cross-appellant's remaining points.