**Eric DOLTZ, Plaintiff,**

v.

**HARRIS & ASSOCIATES, et al., Defendants.**

**No. CIV.A.01–5458.**

United States District Court, E.D. Pennsylvania.

Aug. 13, 2003.

Michael J. McCaney, Jr., Flamm Boroff & Bacine, PC, Blue Bell, PA, James S.

Telepman, Cohen Norris Scherer, North Palm Beach, FL, for Plaintiffs/Counter–Defendant.

John K. Baker, White & Williams LLP, Allentown, PA, Morton Law Firm PLLC, Clinton, MS, for Defendants/Counter–Claimants.

## *MEMORANDUM*

BAYLSON, District Judge.

Presently before the Court is Defendants' Motion for Summary Judgment and Plaintiff's Motion for Leave to File an Amended Verified Complaint. Eric Doltz ("Plaintiff") sued Brenda W. Harris and Douglas Harris ("Harris Defendants") and Harris & Associates Grooving, Inc., a Florida corporation, ("HAGI") (collectively, "Defendants"). Plaintiff brings Count I as a shareholders' derivative suit, complaining that while Brenda Harris was a director of HAGI, she negligently, carelessly and intentionally failed to perform her duties so that funds and assets of HAGI were mismanaged and wasted. In addition, Plaintiff seeks relief in his individual capacity in Count II against Brenda Harris and HAGI for denial of access to corporate records; Count III against HAGI for breach of contract; Court IV against Brenda Harris and HAGI for violations of the Wage Payment and Collection Law, 43 PA. STAT. ANN. § 260.1, *et seq.* (2002); Count V against the Harris Defendants for breach of shareholder agreement; and Count VI against the Harris Defendants for conspiracy.

Defendants have filed a counterclaim against Plaintiff seeking damages and other relief in Count I for intentional misrepresentation; Count II for negligent misrepresentation; Count III for conversion; Court IV for misappropriation of trade secrets; Count V for unfair competition;

and Count VI for tortious interference with contract.

The Court held oral argument on Defendants' Motion for Summary Judgment on April 29, 2003. For the reasons set forth below, the Court will grant in part and deny in part Defendants' Motion for Summary Judgment, and will grant Plaintiff's Motion for Leave to File an Amended Complaint.

## I. Factual and Procedural Background

Plaintiff was involved with the Harris Defendants in the formation of HAGI, which is a highway grooving and grinding business. (Compl.¶ 16.) Highway grooving and grinding is a method of putting grooves in pavement to increase the safety and efficiency of the surface. Plaintiff is a former director, vice president and general manager of HAGI and allegedly retains a 49% interest in HAGI. *Id.* ¶¶ 17, 23, 25. It is undisputed that Plaintiff met with the Harris Defendants in late December 1998 and again in Las Vegas in early 1999, and that HAGI was formed as a result of the Las Vegas meeting. *Id.* ¶ 14; Tr. at 6. Brenda Harris is a director of HAGI as well as its president and secretary, and her husband, W. Douglas Harris, is also involved in the management of HAGI. Plaintiff contends that Brenda Harris maintains a 51% ownership interest in HAGI. (Compl.¶¶ 18, 24, 25.)

Plaintiff asserts that an agreement existed between the parties whereby he would be paid an advance against future profits of HAGI on a weekly basis; his expenses would be paid by HAGI; and profits would be distributed in accordance with stock ownership. *Id.* ¶¶ 20–22. Defendants do not dispute that Plaintiff was paid $1,000–$1,500 per week as a loan against future profits, but argue that Plaintiff knew it was a loan because he has not paid income tax on that money. (Tr.

at 7–8.) Plaintiff alleges that the Harris Defendants have engaged in a scheme to deny him of his entitlement to distributions of HAGI and to divert its income to other businesses owned and operated by the Harris Defendants. (Compl.¶ 34.) In addition, Plaintiff claims that the Harris Defendants have used funds belonging to HAGI for their personal benefit, including the payment of personal expenses, extravagant vacations, automobiles, an airplane and real estate. *Id.* ¶ 35.

Plaintiff further claims that he has never received any distribution of profit from HAGI, and that the Harris Defendants have refused to permit Plaintiff access to the financial records of HAGI. *Id.* ¶¶ 36–37. Defendants have stopped paying Plaintiff his weekly salary as well as his expenses. *Id.* ¶ 38. As a result, on or about October 7, 2001, Plaintiff resigned as a director and left the employment of HAGI. *Id.* ¶ 39.

Plaintiff filed the instant action (No. 01–5458) on October 26, 2001. A related case (No. 02–4625), which was originally filed in the District Court for the Northern District of Florida, was transferred to this Court on July 11, 2002. On August 16, 2002, the Court consolidated the two cases and designated No. 01–5458 as the lead case. Defendants filed a Counterclaim in No. 01–5458 on January 27, 2003, and a stipulation and order dismissing No. 02–4625 was filed on January 29, 2003.

## II. Legal Standard and Jurisdiction

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable

jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

This Court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Venue is appropriate under 28 U.S.C. § 1391.

## III. Discussion

### A. Count I—Shareholders' Derivative Action

Federal courts sitting in Pennsylvania employ Pennsylvania's choice of law rules. *Franklin v. SKF USA, Inc.*, 126 F.Supp.2d 911, 916 (E.D.Pa.2000). Certain matters that are internal to a corporation are properly adjudicated under the laws of the state of incorporation. *Id.* at 918. As a result, the Court will apply Florida law in determining whether Plaintiff has standing to bring shareholders' derivative action.

#### 1. Is Plaintiff a shareholder?

A shareholders' derivative action allows individual shareholders to bring suit to "enforce a corporate cause of action against officers, directors, and third parties." *Ross v. Bernhard*, 396 U.S. 531, 534, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). Under Florida law, one cannot bring a shareholders' derivative action "unless the person was a shareholder of the corporation when the transaction complained of occurred or unless the person became a shareholder through transfer by operation of law from one who was a shareholder at that time." FLA. STAT. ANN. § 607.07401(a) (2002). A "shareholder" is defined under Florida law "as one who is a holder of record of shares in a corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation." FLA. STAT. ANN. § 607.01401(24) (2002).

Defendants argue that the Court should grant summary judgment on Plaintiff's shareholders' derivative action based on lack of standing because Plaintiff is not, and never was, a shareholder. (Mem. Supp. Mot. Summ. J. at 7–10.)

Plaintiff argues that there is a genuine issue of material fact as to whether Plain-

tiff is a shareholder, and presents the following evidence to support his position that he is a shareholder: (1) written memorialization by Brenda Harris that Plaintiff will be a minority shareholder; (2) Plaintiff's deposition testimony that he owned a 49% interest in HAGI; (3) an affidavit of Brenda Harris that she was the majority shareholder of HAGI (thus implying that someone else, who Plaintiff contends is himself, is the minority shareholder); (4) representation by Defendants' prior counsel that Brenda Harris was the majority shareholder of HAGI; and (5) a writing by Douglas Harris that Plaintiff owned 49% of HAGI. (Mem. Opp'n Mot. Summ. J. at 9–10.)

In their Reply Brief, Defendants argue that none of these documents acknowledges having ever made Plaintiff a 49% shareholder of HAGI. (Reply Br. at 4.)

### a. Written Memorialization by Brenda Harris

The written memorialization by Brenda Harris, which is handwritten and undated, states, in pertinent part:

> In an effort to expand into the airport runway grooving business, Harris formed HAGI with Eric Doltz. Mr. Doltz has 25 years of experience in airport and bridge grooving. Mrs. Harris will be the majority owner of the company with Mr. Doltz owning a minority interest of HAGI.

(Mem. Opp'n Mot. Summ. J. at Ex. 3a.)

Defendants argue that this document merely predicts future share ownership if Plaintiff were to be issued shares at some future date, but does not reflect actual share ownership. (Reply Br. at 4–5.)

### b. Plaintiff's Deposition Testimony

Plaintiff testified at his deposition that he owns 49% of HAGI. (Mem. Opp'n Mot. Summ. J. at Ex. 52a.)

### c. Affidavit of Brenda Harris

The affidavit of Brenda Harris states, in pertinent part: "I am the President and majority shareholder of the defendant in this case, Harris & Associates Grooving, Inc. ('Harris Grooving'). I am also the owner of Harris & Associates Painting, Inc. ('Harris Painting')." (Mem. Opp'n Mot. Summ. J. at Ex. 16a.) Defendants argue that although Plaintiff relies on this affidavit to infer and imply that he is a shareholder, the affidavit does not establish that there is any shareholder other than Brenda Harris, and that it is accurate to describe a 100% shareholder as a majority shareholder. (Reply Br. at 7.)

### d. Representation by Defendants' Prior Counsel that Brenda Harris was the Majority Shareholder of HAGI

Plaintiff claims that during a separate litigation in Montgomery County involving the parties (*Int'l Grinding & Grooving, Inc. v. Doltz, et al.*), Defendants' prior counsel represented that Plaintiff was a minority shareholder and that Brenda Harris was a majority shareholder. (Mem. Opp'n Mot. Summ. J. at Ex. 18a.) Defendants argue that this letter does nothing to support Plaintiff's claim because there is no evidence that Pepper Hamilton was representing HAGI or the Harris Defendants at the time of the letter. (Reply Br. at 5.)

### e. Letter by Douglas Harris

The letter by Douglas Harris on behalf of HAGI to the Contract Administrator for the Port Authority of New York and New Jersey states, in pertinent part: "Although HAGI is a relatively new company, its principles have extensive experience in the grooving industry. Brenda Harris, who owns 51% of HAGI ... has six years experience in grooving of bridges. We are including a resume on Eric Doltz, another principle [sic] ...." (Mem. Opp'n Mot. Summ. J. at Ex. 27a.)

The Court concludes that these documents and Plaintiff's testimony, giving Plaintiff the favorable references to which he is entitled, present a genuine issue of material fact for the jury as to whether Plaintiff is a shareholder. The statutory definition of shareholder and the above items of evidence, taken together, are sufficient evidence to warrant a trial on this issue.

### 2. Is Plaintiff's Suit Derivative or Personal?

Defendants further contend that even if Plaintiff were able to prove his status as a shareholder, Plaintiff seeks relief to redress his own perceived personal injury, and is not representative of all shareholders. (Mem. Supp. Mot. Summ. J. at 10–12.) In support of their argument, Defendants rely on *Fort Pierce Corp. v. Ivey*, 671 So.2d 206 (Fla.Dist.Ct.App.1996). In *Fort Pierce*, the trial court found that the plaintiff was entitled to thirty-three percent of the stock of the defendant corporation. *Id.* at 206. The plaintiff filed a post trial motion seeking attorney's fees under Florida's statute governing shareholders' derivative action. *Id.* The Court found that the plaintiff's action was personal, and not derivative because the defendant's decision not to issue the stock to her did not cause injury to the corporation or its stockholders, and the plaintiff was only attempting to redress her own injury. *Id.* at 207.

The Court finds that *Fort Pierce* is distinguishable from the instant action because Plaintiff is not only seeking his alleged share of the stock of HAGI. Plaintiff argues that his claim is derivative in nature because he has also alleged injuries to HAGI including management and waste of corporate assets and diversion of corporate opportunities and contracts. (Mem. Opp'n Mot. Summ. J. at 11.)

In *Hodges v. Buzzeo*, 193 F.Supp.2d 1279 (M.D.Fla.2002), the Court held that, under Florida law:

> An action brought by a stockholder is derivative if the gravamen of the complaint is injury to the corporation or to the whole body of its stock or property and not injury to the plaintiff's individual interest as a stockholder. Citing 19 AM. JUR.2D CORPORATIONS § 528 (1965). Conversely, direct action, or as some prefer, an individual action, is a suit by a stockholder to enforce a right of action existing in him. What these definitions attempt to convey is that a stockholder may bring suit in his own right to redress an injury sustained directly by him, and which is separate and distinct from that sustained by other stockholders. If, however, the injury is primarily against the corporation, or the stockholders generally, then the cause of action is in the corporation and the individual's right to bring it is derived from the corporation. *Id.*

193 F.Supp.2d at 1288 (citation omitted).

The Middle District of Georgia, which is in the Eleventh Circuit, has held "[as] a general rule, a claim for misappropriation and waste of corporate assets by a director or officer of a corporation belongs to the corporation and not to its shareholders, and except in various rare circumstances ... complaining shareholders will not be allowed to recover directly." *Kirk v. First Nat'l Bank*, 439 F.Supp. 1141, 1148 (M.D.Ga.1977) (citations omitted). Although this case is not binding, the Court finds this holding to be persuasive.

Plaintiff's characterization of the suit is entitled to some weight, particularly when it would be more to Plaintiff's personal interest to sue individually. The Court cannot conclude as a matter of law that Plaintiff is suing individually. Stated dif-

ferently, because there is a genuine issue of fact for the jury as to whether Plaintiff is a shareholder and whether the gravaman of Count I is injury to HAGI, and not Plaintiff personally, the Court will deny Defendants' Motion for Summary Judgment as to Count I.

### B. Count II—Access to Corporate Records

Defendants argue that the Court should grant summary judgment on Plaintiff's access to corporate records claim based on lack of standing because Plaintiff is not, and never was, a shareholder and, even though Plaintiff is not a shareholder, this claim is moot because Plaintiff has received the remedy he seeks in this claim through discovery. (Mem. Supp. Mot. Summ. J. at 13.) Defendants further contend that Plaintiff has failed to provide any evidence that he met the mandatory prerequisites of disclosure by formally requesting review of corporate documents pursuant to the terms of Florida law. *Id.* at 14.

At the hearing on April 29, 2003, the Court heard testimony in connection with a then-pending Motion for Sanctions filed by Plaintiff. As a result of further discussion between the parties, Defendants agreed to produce additional documents and the Motion was withdrawn as moot. (Tr. at 89.) This claim should become moot by the time of trial because Defendants agreed to produce corporate records to Plaintiff, which is Defendants' obligation, through discovery. (Mem. Opp'n Mot. Summ. J. at 12.) The Court, therefore, will dismiss Count II without prejudice.

### C. Counts III and IV—Breach of Contract and Wage Payment and Collection Law

Defendants argue that the Court should grant summary judgment on Plaintiff's breach of contract and Wage Payment and Collection Law claims because Defendants timely paid the claimed damages upon notice of the actual amount claimed. (Mem. Supp. Mot. Summ. J. at 16.)

Plaintiff has voluntarily discontinued these claims because Defendants have paid the amounts claimed (Mem. Opp'n Mot. Summ. J. at 12). Thus, the Court need not address this argument and will dismiss Counts III and IV, as moot, without prejudice.

### D. Count V—Breach of Shareholder Agreement

Count V alleges that the Harris Defendants have failed and refused to provide Plaintiff with his share of the profits as promised as part of the oral agreement the parties allegedly entered into when HAGI was incorporated, thereby breaching such agreement. (Compl.¶¶ 61–62.) The Court concludes not only that Defendant is entitled to summary judgment on Count V as a matter of law, but also that the record shows that Plaintiff has withdrawn this claim.

Defendants argue that the Court should grant summary judgment on this claim because there was never any written or oral agreement. (Mem. Supp. Mot. Summ. J. at 17.) In addition, Defendants contend that even if the Court accepts Plaintiff's claim that there was an oral agreement, such an oral agreement is void and unenforceable under Florida's statute of frauds because the agreement was to be performed greater than one year after the oral agreement and the parties never entered into a written agreement. *Id.*

■ FLA. STAT. ANN. § 725.01 (2002), one of Florida's statutes of frauds, provides, in pertinent part, "any agreement that is not to be performed within the space of 1 year

from the making thereof ... shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized." FLA. STAT. ANN. § 725.01 (2002). "[T]he purpose of the Statute of Frauds is to intercept the frequency and success of actions based on nothing more than lose verbal statements and mere innuendo." *Eclipse Med., Inc. v. Am. Hydro–Surgical Inst., Inc.,* 262 F.Supp.2d 1334, 1345 (S.D.Fla.1999) (quotations omitted). For this reason, the statute of frauds "should be strictly construed to accomplish its purpose." *Id.* (quotations omitted).

Plaintiff contends that the oral agreement was that Plaintiff was to receive his 49% interest, and that the agreement was performed within one year because Plaintiff commenced his ownership upon the formation of HAGI. (Mem. Opp'n Mot. Summ. J. at 13.) Plaintiff thus argues that the oral agreement is not barred by the statute of frauds. *Id.* Plaintiff also contends that even if the statute of frauds applied, there are writings signed by the Harris Defendants showing the ownership interest of Plaintiff. *Id.*

The record shows that Plaintiff has confused his claim that he owns 49% of HAGI, which underlies Count I, with his claim that he was entitled to a share of profits as alleged in Count V. Plaintiff's argument in his opposition to Defendants' Motion for Summary as to Count V is inconsistent with his claim for profits in Count V of his Complaint. In Count V, Plaintiff alleges that there was an oral agreement that he was to receive a certain share of the profits. However, in his opposition to Defendants' Motion for Summary Judgment as to Count V, Plaintiff argues only that the oral agreement was that he was to receive his 49% interest in HAGI. Plaintiff's Brief makes no argument to support any claim for a share of profits. (See Mem. Opp'n

Mot. Summ. J. at 12.) At oral argument, Plaintiff's counsel withdrew the claim under Count V. (Tr. at 53–54.) The Court, therefore, finds that there is no longer any claim that there was an oral agreement regarding Plaintiff's entitlement to profits as alleged in Count V.

### 1. Statute of Frauds

■ Even if Plaintiff had not withdrawn his claim under Count V, the Court would find it insufficient as a matter of law. Count V alleges that Defendants breached an oral agreement to provide Plaintiff with a certain share of the profits. Such an oral agreement regarding Plaintiff's share of profits is valid only if it was to be completed within one year.

■ In order to determine whether the statute of frauds bars enforcement of an oral contract on the ground that it is not to be performed within one year, the Court should look to the intent of the parties. *Khawly v. Reboul,* 488 So.2d 856, 858 (Fla. Dist.Ct.App.1986). In *Khawly,* the plaintiffs alleged that the parties orally agreed to form a corporation in which the plaintiffs would own the controlling interest. *Id.* at 857. The defendants contended that the plaintiffs were to receive only a forty percent interest. *Id.* at 858. In determining whether the statute of frauds barred enforcement of the oral agreement on the ground that it was not to be performed within one year, the court looked at the intent of the parties, and found that parties intended the corporation to continue for more than a year. *Id.* Thus, the court held that oral agreement to form the corporation was unenforceable. *Id.*

In the instant action, Defendants present evidence that Plaintiff testified at his deposition, "[M]y intention was at the end of 10 years, they were going to buy out my shares and that was going to be my retirement." Plaintiff has presented no other

evidence as to the intent of the parties with respect to their oral agreement.

The Court, therefore, finds that there is no genuine issue of material fact. The alleged oral agreement of the parties that Plaintiff would receive a share of the profits over ten years is barred by the statute of frauds because it was to be performed greater than one year after the date of the agreement and it was not in a writing signed by the parties.

## 2. Doctrine of Partial Performance

At oral argument, which was held on April 29, 2003, the Court ordered both parties to file supplemental briefs addressing the issue of whether the doctrine of partial performance removes the oral shareholders agreement from the statute of frauds.

▇▇ Although the doctrine of partial performance may be used to remove a contract from the statute of frauds for the purpose of granting specific performance or other equitable relief, the doctrine of partial performance is not available in any action solely for damages at law. *Dwight v. Tobin,* 947 F.2d 455, 459 (11th Cir.1991); *Wharfside, Inc. v. Superior Bank,* 741 So.2d 542, 545 (Fla. 4th DCA 1992) (citing *Hospital Corp. of Am. v. Associates in Adolescent Psychiatry,* 605 So.2d 556, 558 (Fla.Dist.Ct.App.1992)). As to Plaintiff's claim for damages in Count V, the doctrine of partial performance cannot be used to remove the oral agreement from the statute of frauds, and because the Court has already found that there is no genuine issue of material fact as to whether the oral agreement of the parties with respect to Plaintiff's share of the profits is barred by the statute of frauds, the Court will grant Defendants' Motion for Summary Judgment on Count V as to Plaintiff's claims for damages.

▇▇ Allowing Plaintiff to add a claim for equitable relief as to Count V will not result in the removal of the oral agreement from the statute of frauds because the doctrine of partial performance does not apply to personal services contracts. *Miller Constr. Co. v. First Indus. Tech. Corp.,* 576 So.2d 748, 750 (Fla. 3rd DCA 1991). A personal services contract has been defined as "[a] contract which contemplates the performance of personal services involving the exercise of special knowledge, judgment, taste, skill, or ability." *In re Compass Van & Storage Corp.,* 65 B.R. 1007, 1011 (Bkrtcy.E.D.N.Y.1986) (citation omitted).

In Count V, Plaintiff claims that he performed all duties required of him in lending his expertise, business contacts, and efforts to HAGI pursuant to the oral agreement between the parties. (Compl.¶ 60.) The Court finds that Plaintiff's services fit within the definition of personal services and, thus, the oral agreement constitutes a personal services contract.

Plaintiff's Second Supplemental Brief (Docket No. 61) fails to address the issue. As in his original brief in opposition to Defendants' Motion for Summary Judgment, Plaintiff ignores the allegation in Count V of the Complaint that the oral agreement was for a share of the profits and only discusses Plaintiff's assertion that he is a 49% owner, which is the primary allegation in Count I. (Suppl. Br. at 9–10.) Plaintiff does not dispute that his services were personal services, and does not dispute that under Florida law, the doctrine of partial performance does not apply to personal services contracts for the purpose of removing the agreement from the statute of frauds.

Therefore, the doctrine of partial performance cannot be used to remove the oral agreement from the statute of frauds.

Plaintiff has not rebutted Defendants' arguments for summary judgment as to Count V with either genuine issues of fact for trial or legal arguments. As noted above, at oral argument, Plaintiff's counsel withdrew his claim under Count V. (Tr. at 53–54.) Alternatively, because the Court has already found that there is no genuine issue of material fact as to whether the alleged oral agreement that Plaintiff would receive a share of the profits is barred by the statute of frauds and no equitable relief is available to Plaintiff, as a matter of law, the Court will grant Defendants' Motion for Summary Judgment Count V.

### E. Count VI—Conspiracy

A civil conspiracy is the agreement of two or more entities or individuals to engage in an unlawful act, or an otherwise lawful act by unlawful means, when some overt act is taken in furtherance of the conspiracy and some actual legal harm accrues to the plaintiff. *Watkins v. Pa. Bd. of Prob. & Parole,* No. CIV.A.02–2881, 2002 U.S. Dist. LEXIS 23504, at *27 (E.D.Pa. Nov. 5, 2002) (citations omitted). It is not necessary to make a choice of law determination with respect to the civil conspiracy because a comparison of the laws of Pennsylvania and Florida indicates, for all practical purposes, that Pennsylvania law and Florida law are identical with respect to civil conspiracy.

To prove a civil conspiracy under Pennsylvania law, a plaintiff must show the following elements: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. *Id.* at *28. Furthermore, proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy. *Id.* Merely describing something as mali-

cious is not sufficient to give the proper inference of malice . . . . malice requires an allegation that the sole purpose of the conspiracy was to injure the plaintiff. *Id.* at *28–29.

Defendants argue that the Court should grant summary judgment on Plaintiff's conspiracy claim because: (1) Plaintiff has failed to produce anything suggesting that Defendants have committed an overt act done in pursuit of a common purpose that is unlawful, (2) Plaintiff has failed to produce anything suggesting that Defendants acted with malice or an intent to injure Plaintiff in any way; and (3) Plaintiff has failed to satisfy the requirement that the evidence presented to establish a civil conspiracy be full, clear and satisfactory. (Mem. Supp. Mot. Summ. J. at 20.)

Plaintiff argues that he has presented sufficient evidence to establish a genuine issue of material fact as to whether the Harris Defendants acted in concert with a common purpose to divert corporate opportunities and contracts, as well as the waste of corporate assets to benefit themselves and other corporations fully owned by them. (Mem. Opp'n Mot. Summ. J. at 13–14.) In addition, Plaintiff contends that the Harris Defendants have committed overt acts pursuant to their purpose, which have caused actual damage to HAGI and Plaintiff, and that their intent was malicious with the intent to harm both HAGI and Plaintiff. *Id.* at 14. Plaintiff relies on the following evidence in support of his argument: (1) financial records showing that HAGI deposited into its checking account $150,000, which was obtained through a loan on May 7, 1999, and $150,000 was transferred a week later to the checking account of Harris & Associates Painting, Inc. ("HAPI"), a related corporation owned solely by the Harris Defendants; (2) financial records showing

that HAGI secured a second loan on May 26, 1999 in the amount of $246,579, and that same day $50,000 was transferred to HAPI and another $50,000 was transferred to HAPI two days later; (3) financial records showing that in HAGI's first year of operations, 1999, $360,025 was transferred from HAGI to HAPI, although some funds were transferred back to HAGI; (4) financial records showing that the Harris Defendants used HAPI for their business and personal expenses; and (5) records showing that many contracts for airport grooving were written in the name of HAPI, rather than HAGI. *Id.* at 14–15.

The Court finds that Plaintiff's evidence presents a genuine issue of material fact for the jury as to whether Defendants have committed an overt act done in pursuit of a common purpose that is unlawful and whether Defendants acted with malice or an intent to injure Plaintiff in any way. Therefore, the Court will deny Defendants' Motion for Summary Judgment on this claim.

### F. Defense Based on FLA. STAT. § 607.0620(2)

At oral argument, which was held on April 29, 2003, the Court ordered both parties to file supplemental briefs addressing the issue of whether FLA. STAT. § 607.0620(2), another one of Florida's Statute of Frauds, applies to render the oral shareholders agreement void and unenforceable.

 Plaintiff argues that FLA. STAT. ANN. § 607.0620(2),[1] which requires a subscription for shares to be in writing and signed by the subscriber, is not a bar to his claim because he is not, and never was,

a subscriber. (Pl.'s Supplemental Br. at 1–2). Rather, Plaintiff claims that he is, and always was, a shareholder pursuant to an oral agreement made between himself and Defendants in which he was to become a shareholder of HAGI upon its incorporation. *Id.* at 2. As evidence of this agreement, Plaintiff primarily relies on a document admittedly written by Brenda Harris (Pl.'s Amended R. at 60a), which states, in pertinent part: "Mrs. Harris will be the majority owner of the company with Mr. Doltz owning a minority interest of HAGI." *Id.* at 3a.

In support of his proposition that he was never a subscriber, Plaintiff establishes a fundamental difference between a shareholder and subscriber by contrasting FLA. STAT. ANN. § 607.01401(24), which defines a shareholder as someone holding or owning shares in a corporation, with FLA. STAT. ANN. § 607.01401(28),[2] which defines a subscriber as someone who subscribes for shares in a corporation. (Pl.'s Supplemental Br. at 1). In addition, Plaintiff cites authority that indicates that an agreement between individuals to incorporate and take shares in a corporation does not qualify as a subscription for shares. *Id.*

Defendants argue that Plaintiff's claim of entitlement to a 49% interest in HAGI warrants a grant of Defendants' Motion for Summary Judgment based on FLA. STAT. ANN. § 607.0620(2). (Reply Br. at 10.) Defendants suggest that one can only become a shareholder through subscription, purchase, gift, testate bequest, or intestate descent. *Id.* at 9. Thus, because Plaintiff did not allege he became a shareholder through either gift, testate bequest, or intestate descent, Defendants argue that he could only have become a share-

---

1. FLA. STAT. ANN. § 607.0620(2) provides: "A subscription for shares, whether made before or after incorporation, is not enforceable unless in writing and signed by the subscriber."

2. FLA STAT. ANN. § 607.01401(28) states: "'Subscriber' means a person who subscribes for shares in a corporation, whether before or after incorporation."

holder through purchase or subscription, thereby bringing his claim under FLA. STAT. ANN. § 607.0620(2). *Id.* at 9–10. Furthermore, citing 8A FLA. JUR.2d Business Relationships § 138, which Defendants argue characterizes a subscription agreement as a contract between the subscriber and the corporation, Defendants propose that the only writing that would satisfy the writing requirement would be one between Plaintiff and Brenda Harris. *Id.* at 10. Defendants argue that because Plaintiff has failed to provide evidence of any such writing, which acknowledges the amount of stock to be issued and the consideration to be given in exchange, FLA. STAT. ANN. § 607.0620(2) bars his claim. *Id.* at 10–11.

 Defendants incorrectly suggest that the *only* way to become a shareholder is through subscription, purchase, gift, bequest, or descent. In fact, the very authority on which Defendants base their assertion states that "any agreement, no matter how irregular, by which a person shows an intention to become a shareholder, and to which the corporation acquiesces, is sufficient to bind both the subscriber and the corporation and to create the shareholder relation." 8A FLA. JUR. Business Relationships § 157 (2003) (citing *Therrell v. Reilly,* 111 Fla. 805, 151 So. 305 (1932)). In fact, "[s]tock can be issued with or without the use of formal subscriptions. In the case of small, closely held corporations where the percentage of ownership is decided in advance by the organizers, subscriptions are seldom used." 18A AM. JUR.2d Corporations § 578. Furthermore, "[m]ere irregularities or informalities of a stock issuance do not render the stock void." *Zinger v. Gattis,* 382 So.2d 379, 380 (Fla.Dist.Ct.App.1980) (requiring a trial on the merits where parties allegedly agreed to incorporate and the plaintiff alleged he was to be made a shareholder in exchange for contributing operating funds to the company's first project).

Because a shareholder need not be a subscriber to own shares in a corporation, the Court finds that FLA. STAT. ANN. § 607.0620(2) is not applicable in the instant action as a matter of law.

## G. Plaintiff's Motion for Leave to File an Amended Complaint

In his Motion for Leave to File an Amended Complaint, Plaintiff seeking to amend his complaint to add an alternative theory of relief under the claims brought in Count I based on specific performance.

 The Federal Rules of Civil Procedure provide that leave to amend a pleading "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). As the Third Circuit has explained:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Lorenz v. CSX Corp.,* 1 F.3d 1406, 1413 (3d Cir.1993) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). The decision whether to grant or deny a motion for leave to amend is within the sound discretion of the district court. *Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267, 272 (3d Cir.2001).

### 1. Undue Delay

 The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing

an unfair burden on the opposing party. *Cureton v. Nat'l Collegiate Athletic Ass'n,* No. CIV.A.97–131, 2000 WL 388722, at *2 (E.D.Pa. Apr. 13, 2000) (citing *Adams v. Gould,* 739 F.2d 858, 867 (3d Cir.1984)). When a party filing a motion to amend has no adequate explanation for the delay, untimeliness can be a sufficient reason to deny leave to amend. *Id.* (citations omitted). Delay in presenting a post-judgment amendment when the moving party had an opportunity to present the amendment earlier is a valid reason for a district court not to permit an amendment. *Id.* (citations omitted).

 In the instant action, Plaintiff filed his Motion for Leave to File an Amended Complaint 18 months after the start of litigation, two months after the end of the discovery period, and four days after the action was scheduled for the trial pool. In addition, Plaintiff admits that the proposed amendment does not include any additional new facts that were unavailable at the time the original complaint was filed and Plaintiff has offered no adequate explanation for the delay. Moreover, it appears that Plaintiff is only seeking to amend his complaint to add an alternative theory of relief based in equity in order to defeat the possibility of the Court granting summary judgment on Plaintiff's breach of oral shareholders agreement claim. *See Pallottino v. City of Rio Rancho,* 31 F.3d 1023, 1027 (10th Cir.1994) (dismissing a motion to amend by stating "Much of the value of summary judgment procedure . . . would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory fail, come back along thereafter and fight on the basis of some other theory").

Because Count V has already been withdrawn, or, in the alternative, dismissed and because a trial is already necessary on

Plaintiff's claims in Count I, which is a derivative claim that is equitable in nature, the Court finds that it will be of no prejudice to Defendants and in the interests of justice to grant Plaintiff's Motion for Leave to File the Proposed Amended Complaint.

## IV. Conclusion

For the reasons set forth above, the Court will grant in part and deny in part Defendants' Motion for Summary Judgment.

An appropriate Order follows.

### ORDER

AND NOW, this 13th day of August, 2003, upon consideration of Defendants' Motion for Summary Judgment (Docket No. 50), and the responses and supplemental briefs thereto, and Plaintiff's Motion for Leave to File an Amended Complaint (Docket No. 60) and Defendants' response thereto, it is hereby ORDERED as follows:

1. Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART;

2. Defendants' Motion for Summary Judgment is DENIED as to Counts I and VI;

3. Counts II, III and IV are DISMISSED WITHOUT PREJUDICE;

4. Count V is considered withdrawn, or, alternatively, is DISMISSED WITH PREJUDICE;

5. Plaintiff's Motion for Leave to File the Proposed Amended Complaint is GRANTED;

6. Plaintiff shall file the Proposed Amended Complaint within ten (10) days of the date of this Order;

7. Plaintiff shall file his Pretrial Memorandum on August 26, 2003;

8. Defendants shall file their Pretrial Memorandum on September 2, 2003; and

9. The trial pool date for this case is September 9, 2003.